JAMES G. BENNETT & another[1] *vs.* COMMISSIONER OF FOOD
AND AGRICULTURE.

Berkshire. May 9, 1990. - August 14, 1991.

Present: LIACOS, C J., WILKINS, ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Real Property*, Agricultural preservation restriction.

Where the terms of an instrument creating an agricultural preservation
restriction pursuant to G. L. c. 184, § 31, contained language granting
to the Commissioner of Food and Agriculture the right to control the
location of a proposed family dwelling on the property, the commis-
sioner was entitled, under common law principles, to enforce this servi-
tude against the grantors' successors in title even though, in that aspect,
it arguably did not fall within the precise statutory definition of an agri-
cultural preservation restriction. [3-6]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 15, 1989.

---

[1]Robin Bennett.

The case was heard by *Lawrence B. Urbano*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paul Greene* for the plaintiffs.

*Juliane M. Dow*, Assistant Attorney General, for the Commissioner of Food and Agriculture.

*Daniel A. Taylor, Mark A. Simonoff, & Sarah H. Bell*, for The Massachusetts Farm and Conservation Lands Trust & another, amici curiae, submitted a brief.

WILKINS J. The Bennetts seek a declaratory judgment that they may construct a dwelling for their use anywhere on land they own that is subject to an agricultural preservation restriction (APR). See G. L. c. 184, § 31 (1990 ed.).

In April, 1985, Kenneth L. Coon, Jr., and Minnie M. Rood for $291,000 granted to the Commonwealth, acting through the Commissioner of Food and Agriculture (commissioner), an APR on 250 acres of farm land in Sheffield. On December 31, 1986, Coon and Rood sold the property, and an adjacent, unrestricted parcel which contained a house and two barns, to the Bennetts for $155,000.

Shortly thereafter, the Bennetts applied to the commissioner for approval to build a farmhouse on the restricted parcel. The Bennetts wished to construct the house on a hilltop on the site, a location that would be reached by a 3,000 foot driveway. The commissioner determined that the site selected by the Bennetts would cause soil erosion, would eliminate two acres of prime farm land through the construction of the driveway, and would change the nature of the premises from a farm to an estate by raising the fair market value of the site. He concluded that construction of a home on the hilltop would undermine the purpose of the APR, which was to preserve the land for future farmers. The Bennetts rejected five alternative sites that the commissioner suggested.

A judge of the Superior Court granted summary judgment for the commissioner, declaring that the commissioner did not exceed his authority in controlling the location of the proposed family dwelling. The judge ruled that (1) G. L.

c. 184, § 31, which authorizes APRs, did not grant the Bennetts the absolute right to construct a personal dwelling anywhere on the site and (2) a regulation of the commissioner (330 Code Mass. Reg. § 22.08 [2] [b] [1986]) that purportedly gave him the right to pass on the construction of dwellings on land subject to an APR was lawful. We transferred the Bennetts' appeal here on our own motion. We affirm the judgment, but arrive at our conclusion on the basis of language in the instrument granting the APR. We rule that the deed by its terms granted the commissioner the right to limit the location of the Bennetts' farmhouse and that the deed restriction is enforceable on common law principles.

The APR, which is set forth on what appears to be a standard form used by the commissioner, provides that the landowner reserves the right to construct one or more dwelling units subject, however, to the approval of the commissioner. The Bennetts do not contend that, in denying their request, the commissioner abused his discretion in the exercise of a lawful approval function. They argue rather that the restriction is unlawful insofar as it purports to grant to the commissioner an approval role that he does not lawfully have. The argument is that the commissioner may acquire and exercise authority only as to APRs as precisely defined in G. L. c. 184, § 31. Relying on the same general point, the Bennetts further argue that, as successors to the parties who granted the APR, they are not bound because "there is no privity and the restriction does not benefit any land of the grantee [commissioner]," citing *Gulf Oil Corp.* v. *Fall River Hous. Auth.*, 364 Mass. 492, 498 (1974), and *Orenberg* v. *Johnston*, 269 Mass. 312, 316 (1929).[2]

---

[2]The *Gulf Oil Corp.* opinion noted that a restriction on the use of land is enforceable by another landowner only if it meets the requirements of covenants running with the land. One requirement is that the plaintiff have land that the parties to the agreement intended to benefit from the restriction. *Id.* Here, the commissioner owns no land intended to be benefited by the APR, nor is he in privity with the Bennetts.

"The fact that there is no other land to which the promise concerning [perpetual maintenance of] the clock could be annexed makes it unen-

The Bennetts recognize that G. L. c. 184, § 32 (1990 ed.), provides that APRs, as defined in § 31, shall not "be unenforceable on account of lack of privity of estate or contract or lack of benefit to particular land." They contend, however, that the commissioner may not rely on that language because it applies only to a restriction that conforms precisely to the definition of an APR in § 31. They assert that § 31 grants no authority to limit their choice of a home site and that the common law governing easements in gross applies to bar enforcement of that portion of the restriction that purports to give the commissioner control over the location of their proposed home.

The Bennetts' assertion that the restriction described in the instrument executed by their predecessors in title is not in all respects an APR, as defined in G. L. c. 184, § 31, is not frivolous. That definition, which appears in the margin,[3] states that an APR is a right to forbid or limit "(a) construction or placing of buildings *except* for those used for agricultural purposes or *for dwellings used for family living by the land owner;* (b) . . . ; and (c) other acts or uses detrimental to such retention of the land for agricultural use" (emphasis supplied). The Bennetts argue that they have the right, stated in clause (a), to construct a dwelling for their own

---

forceable either at law or in equity against any successor in title [to the current landowner]." *Orenberg v. Johnston,* 269 Mass. 312, 316 (1929).

[3]"An agricultural preservation restriction means a right, whether or not stated in the form of a restriction, easement, covenant or condition, in any deed, will or other instrument executed by or on behalf of the owner of the land appropriate to retaining land or water areas predominately in their agricultural, farming or forest use, to forbid or limit any or all (a) construction or placing of buildings except for those used for agricultural purposes or for dwellings used for family living by the land owner, his immediate family or employees; (b) excavation, dredging or removal of loam, peat, gravel, soil, rock or other mineral substance in such a manner as to adversely affect the land's overall future agricultural potential; and (c) other acts or uses detrimental to such retention of the land for agricultural use. Such agricultural preservation restrictions shall be in perpetuity except as released under the provisions of section thirty-two. All other customary rights and privileges of ownership shall be retained by the owner including the right to privacy and to carry out all regular farming practices."

family living (and, as we have noted, that any limitation on that right purportedly expressed in the deed to the commissioner exceeds his authority and is an unenforceable easement in gross). The commissioner answers that clause (c) permits the prohibition or limitation of "other acts or uses detrimental to appropriate preservation of . . . the site." The Bennetts point to the word "other" and say that the permitted personal residential use referred to in clause (a) cannot be "another act or use" referred to in clause (c). The commissioner notes the detrimental effect of the long driveway, but, if a home for the landowner is authorized by law anywhere on the site, a driveway to the home would be a lawful ancillary use of the site.

We need not resolve the ambiguity in the statute because we conclude that the servitude is enforceable according to its terms. In other words, the servitude expressed in the deed is enforceable against successors in title of its grantors even in that aspect involved in this case that arguably does not fall within § 31's definition of an APR. The Bennetts' predecessors executed an instrument by its terms granting the commissioner certain rights. The Bennetts acquired title with knowledge of that instrument. The parties to the instrument, perhaps unknowingly, resolved any ambiguity in the meaning of § 31's definition of an APR by stating explicitly that the commissioner had the right to control the construction of any dwelling unit on the site.

Because of the public policy expressed in § 32's determination that an APR may be enforced although it is an easement in gross, we decline in this case to apply common law rules requiring privity of contract or estate and that the party seeking to enforce a servitude have an interest in land benefited by it. Even if we assume in the Bennetts' favor that the apparent right the commissioner received to pass on site locations exceeds the right defined in § 31, no rule of law bars the commissioner from accepting such a benefit. Indeed, the Executive Office of Environmental Affairs, within which is the Department of Food and Agriculture (G. L. c. 21A, § 7 [1990 ed.]), is authorized to accept a grant or gift that

assists it in discharging its duties. See G. L. c. 21A, § 9 (1990 ed.). The Secretary of Environmental Affairs established the APR program. See G. L. c. 132A, § 11A (1990 ed.). Moreover, the Legislature has recognized the enforceability of certain easements in gross by public officials and charitable entities where the public purpose of the restriction is clear. See G. L. c. 184, § 31 (defining a conservation restriction and a preservation restriction, as well as an agricultural preservation restriction) and § 32 (concerning their enforcement).

Where the beneficiary of the restriction is the public and the restriction reinforces a legislatively stated public purpose, old common law rules barring the creation and enforcement of easements in gross have no continuing force. In such a case, the appropriate question is whether the bargain contravened public policy when it was made and whether its enforcement is consistent with public policy and is reasonable. See Restatement of Servitudes, Tentative Draft No. 2 (April 5, 1991) § 3.1 ("A servitude . . . is valid unless the arrangement it purports to implement infringes a constitutionally protected right, contravenes a statute or governmental regulation, or violates public policy"). The person who has the right to enforce the restriction is clearly identified. The restriction is consistent with, indeed strengthens, the public policy expressed in § 31. Public funds were expended for the APR as a result of a bargain made by the commissioner and the Bennetts' predecessors in title, a bargain of which the Bennetts had notice. There is no reason why this reasonable restriction should not be enforced according to its terms.

We are not asked to, and do not, decide whether the commissioner otherwise acted lawfully in disapproving the Bennetts' site selection. The judgment declaring that the com-

missioner did not exceed his authority in controlling the location of the proposed family dwelling is affirmed.[4]

.                                    *So ordered.*

---

[4]What we decide here does not, of course, endorse the enforcement of all easements in gross. It does, however, prompt us to observe that certain common law rules concerning the creation, validity, and enforcement of servitudes may no longer be sound and that we are willing to reconsider them in appropriate cases. Any change affecting substantive rights would presumably be made applicable prospectively, that is, to instruments executed after the date of this opinion (see *Tucker* v. *Badoian*, 376 Mass. 907, 918-919 [1978] [Kaplan, J., concurring]) or any prior date on which fair warning was given so that no one could reasonably have relied on prior law (see *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 98 [1979]).