WILLIAM F. GARLAND & others[1] vs. BERNARD J.
ROSENSHEIN.

Suffolk. January 11, 1995. - May 9, 1995.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Real Property*, Deed, Restrictions. *Deed*, Condition.

A Land Court judge, in an action brought under G. L. c. 240, § 10A,
correctly held that a restriction in a deed purporting to prohibit the
development of a parcel of land was unenforceable pursuant to G. L.
c. 184, § 30, where the restriction was of no "actual and substantial
benefit" to the person claiming a right of enforcement. [321-322]

CIVIL ACTION commenced in the Land Court Department
on June 4, 1993.

The case was heard by *Robert V. Cauchon*, J., on a state-
ment of agreed facts.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Anthony M. Feeherry* for the defendant.

*Nicholas J. Decoulos* for the plaintiffs.

NOLAN, J. The plaintiffs brought this action pursuant to
G. L. c. 240, § 10A (1992 ed.), seeking to invalidate a deed
restriction which purports to prohibit the development of a
parcel of land located at 260 Andover Street in Peabody
(property), in conjunction with a parcel of land which is
owned by Willowdale Realty Trust (adjoining land). The
parties tried the case on the  basis of stipulated facts. A
judge in the Land Court declared the restriction invalid be-
cause it was of no "actual and substantial benefit" to the de-
fendant within the meaning of G. L. c. 184, § 30 (1992 ed.),

---

[1]Nicholas J. Decoulos, as trustee of Willowdale Realty Trust, and Peter
Pantazelos.

or in the alternative, because the restriction constituted an unreasonable restraint on alienation.[2] On appeal, the defendant argues that the restriction provides him with an "actual and substantial benefit," in the form of an economic benefit since a developer who wishes to develop the property in conjunction with the adjoining land would have to pay the defendant to release the restriction. We transferred the case to this court on our own motion, and now affirm.

In December, 1986, the defendant purchased the property for $775,000. Shortly thereafter, the defendant began discussions with Nicholas J. Decoulos, trustee of Willowdale Realty Trust, regarding the possibility of purchasing the adjoining land. The parties failed, however, to reach an agreement. On June 3, 1987, the defendant sold the property to North Shore Auto Brokers, Inc. (North Shore), for $1,250,000 subject to a restriction which, among other things, purported to prohibit North Shore and its successors from developing the property with the adjoining land.[3] The defendant does not

---

[2]General Laws c. 184, § 30 (1992 ed.), provides in pertinent part: "No restriction shall in any proceeding be enforced or declared to be enforceable . . . unless it is determined that the restriction is at the time of the proceeding of actual and substantial benefit to a person claiming rights of enforcement."

[3]The restriction provides that: "This conveyance is made on the express condition and Grantee covenants for the benefit of Grantor [Rosenshein] that neither Grantee nor its successors or assigns shall at any time hereafter develop, directly or indirectly, the land described above and conveyed by this deed (the 'Conveyed Land') together with the adjoining land (the 'Adjoining Land') shown on the aforesaid Plan as land of Willowdale Realty Trust, Nicholas Decoulos, Trustee. In furtherance of the above, Grantee and its successors and assigns shall not (i) grant for the benefit of the Adjoining Land, easements upon or rights of way across the Conveyed Land including easements upon or rights of way for passage of motor vehicles or motor vehicle parking, air rights and installation of utility lines or (ii) construct or permit any other party to construct a building or other improvement which shall straddle the common boundary of the Conveyed Land and the Adjoining Property. At the option of the Grantor, his successors or assigns, Grantee and its successors or assigns shall place a fence or other device on the boundary between the Conveyed Land and the Adjoining Land to preclude the passage of motor vehicles and pedestrians between the two."

own any land which is benefited by the restriction, nor does he own any land in Peabody.

Approximately two years later, North Shore sold the property, subject to the restriction, for $1,675,000. The new purchaser eventually defaulted on his mortgage, and in June, 1991, the Federal Deposit Insurance Corporation (FDIC) foreclosed on the mortgage and took title to the property. Despite several offers, the FDIC was unable to sell the property for some time since it could not deliver title free of the encumbrance. Finally, on January 10, 1994, the plaintiffs, William Garland and Peter Pantazelos, agreed to purchase the property from the FDIC for $550,000, subject to all restrictions and encumbrances. The plaintiffs, who now wish to develop the property in conjunction with the adjoining land, brought this action in an effort to invalidate the restriction.

The trial judge properly decided that G. L. c. 184, § 30, barred the enforcement of the restriction. A restriction may be enforced only if it "is at the time of the proceeding of actual and substantial benefit to a person claiming rights of enforcement." The restriction is not an "actual and substantial benefit" to the defendant within the meaning of § 30. His claim of benefit rests solely on the existence of the purported restriction itself. If the existence of a purported restriction alone could provide the circumstances for the finding of an "actual and substantial benefit," this provision in § 30 never could apply to bar enforcement of any restriction. Section 30 must refer to an "actual and substantial benefit" to the holder of a purported right of enforcement beyond the "hold-up price" for releasing the restriction. To be "actual," the benefit must come from the existence and enforceability of the restriction, rather than from the price of releasing the restriction.

Even under traditional common law principles, the restriction fails. The defendant admittedly owns no land which is benefited by the restriction. The only benefit from the restriction is the potential economic gain that the defendant may receive if someone is willing to pay the defendant in order to release the restriction. This benefit is personal, and does not

confer a direct physical advantage to any piece of land owned by the defendant. Cases have stated that, where the benefit is personal, the burden of the covenant does not run with the land. See *Orenberg* v. *Johnston*, 269 Mass. 312, 316 (1929) ("fact that there is no other land to which the promise concerning the [maintenance of] the clock could be annexed makes it unenforceable either at law or in equity against any successor in title"). But see *Middlefield* v. *Church Mills Knitting Co.*, 160 Mass. 267, 271-272 (1894). Further, although we have expressed a willingness to reconsider common law rules concerning the creation, validity, and enforcement of servitudes, see *Bennett* v. *Commissioner of Food & Agric.*, 411 Mass. 1, 7 n.4 (1991), this is not a case where "old common law rules barring the creation and enforcement of easements in gross have no continuing force." *Id.* at 6 (enforcing servitude in the absence of dominant estate where enforcement consistent with public policy and reasonable).[4]

Accordingly, we affirm the decision of the Land Court, and hold that the covenant is unenforceable.

*So ordered.*

---

[4]Although the Restatement of Property § 537 (1944) takes the position that the burden of a covenant does not run with the land if the benefit of the covenant is personal, the Restatement of Servitudes § 3.2 (Tent. Draft No. 2, 1991), discards the touch and concern doctrine. "Neither the burden nor the benefit of a covenant is required to touch or concern land in order for the covenant to be valid as a servitude." *Id.* Under § 3.1 of the Restatement, "[a] servitude . . . is valid unless the arrangement it purports to implement infringes a constitutionally protected right, contravenes a statute or governmental regulation, or violates public policy." Restatement of Servitudes, *supra* at § 3.1. We need not decide today whether to follow that approach.