FRED A. HASTINGS & others[1] *vs.* COMMISSIONER OF
CORRECTION & others[2] (and a companion case[3]).

Middlesex. December 3, 1996. - January 7, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Administrative Law,* Adjudicatory proceeding. *Imprisonment,* Transfer of
prisoner, Reclassification of prisoner. *Due Process of Law,* Prison regula-
tion, Prison classification proceedings. *Constitutional Law,* Imprison-
ment, Equal protection of laws.

The Commissioner of Correction acted permissibly and within his authority
under G. L. c. 124, § 1(*g*), and pursuant to 103 Code Mass. Regs.
§ 420.07 (1995), to issue an administrative reclassification order transfer-
ring all inmates who were serving life sentences for murder in the second
degree and who had been denied parole two or more times from prere-
lease facilities to higher security institutions. [49-50]

Transfers of certain State prisoners from prerelease facilities to higher secu-
rity institutions pursuant to a lawful administrative reclassification order
of the Commissioner of Correction did not violate the prisoners' Federal
right to due process, where such transfers did not constitute an "atypi-
cal and significant hardship" such as would implicate a constitutional
liberty interest. [50-52]

Transfers of certain State prisoners from prerelease facilities to higher secu-
rity institutions pursuant to a lawful administrative reclassification order
of the Commissioner of Correction, that amounted to revocation of a
privilege, did not implicate any liberty interest sufficient to support a
claim of violation of due process under the State Constitution. [52]

State prison inmates did not demonstrate that the basis of certain classifica-
tion decisions made by the Commissioner of Correction was irrational
so as to violate G. L. c. 127, § 32, or to impinge on any equal protec-
tion concerns. [52-53]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on April 19, 1991, and July 29, 1991, respectively.

[1]Wendell E. Greenman, Francis F. Soffen, and James G. Doherty.

[2]Additional defendants, sued individually and in their official capacities,
are a former commissioner of correction and the superintendent and a dep-
uty superintendent of the Massachusetts Correctional Institution, at
Concord. The commissioner is also sued individually.

[3]Christopher J. Pina & another *vs.* Commissioner of Correction & others.

The cases were heard by *Peter M. Lauriat*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Donald A. Harwood*, of New York (*Thomas E. Finnerty* with him) for Christopher J. Pina & another.

*Steven J. Rappaport* for Fred A. Hastings & others.

*Charles M. Wyzanski* for the Commisssioner of Correction & others.

GREANEY, J. In two consolidated actions filed in the Superior Court, the plaintiffs, six inmates serving life sentences for their convictions of murder in the second degree, sought injunctive and declaratory relief, damages, and attorney's fees in connection with an administrative order of the Commissioner of Correction (commissioner). The order, issued on March 11, 1991, transferred all inmates serving life sentences for their convictions of murder in the second degree, and who had been denied parole two or more times, from prerelease facilities to higher security institutions. The plaintiffs contend that the administrative order was invalid because it: (1) constituted a policy of general application that was promulgated in violation of the notice and hearing requirements of G. L. c. 30A (1994 ed.); (2) violated their due process rights under the Federal and State Constitutions; and (3) violated both their statutory rights to equal treatment under G. L. c. 127, § 32 (1994 ed.), and their rights to equal protection under the Federal Constitution.[4] A judge in the Superior Court considered cross motions for summary judgment, denying the plaintiffs' motions and allowing the defendants' motion. The plaintiffs appealed, and we transferred the consolidated cases from the Appeals Court to this court on our own motion. We conclude that summary judgment was proper. We vacate the judgment (which simply dismissed all the claims) and order the entry of a declaration of the parties' rights.

The material facts are not in dispute and may be summarized as follows. On February 4, 1991, a new commissioner assumed office and shortly thereafter toured Department of

---

[4]An additional claim that the administrative order as applied to the plaintiffs violated their civil rights, as protected by G. L. c. 12, § 11H and 11I (1994 ed.), was decided adversely to the plaintiffs and has not been pursued on appeal.

Correction (department) prerelease facilities, where he spoke with various officials and inmates. The commissioner observed that inmates in prerelease facilities were not being directly supervised by department staff, and that there were no physical impediments to prevent an escape by an inmate. He also learned that prerelease facilities held a significant number of inmates who were serving life sentences for convictions of murder in the second degree and who had been denied parole two or more times. After requesting and examining summaries of the files of inmates in this category, the commissioner concluded that these inmates might think they would never receive parole and that they thereby posed a serious risk to safety and security. He also believed that other inmates eligible for prerelease might be better candidates for the limited number of beds in prerelease facilities. On March 11, 1991, the commissioner ordered that all inmates serving life sentences for convictions of murder in the second degree who had been denied parole two or more times be removed from prerelease facilities (with one or two exceptions). The six plaintiffs were subsequently transferred to the Massachusetts Correctional Institution, at Concord, despite their exemplary institutional and work records and their successful participation in furloughs and community-related activities.

At Concord, each plaintiff was given a separate and individualized reclassification hearing before a five-member board at which parole reviews, disciplinary chronology, and other pertinent information was considered. After the hearings, the boards recommended that five of the plaintiffs be returned to their respective prerelease facilities,[5] and that the remaining plaintiff be placed in higher security, minimum-security status.[6] These recommendations were ultimately reviewed by department officials and the commissioner's representative, who decided to retain all six plaintiffs in higher security status.

A new commissioner was appointed on July 15, 1991, who continued the administrative order in effect unless "extraordinary circumstances" existed that justified an inmate's being kept in, or transferred to, a prerelease facility. A commissioner's representative stated that in some cases inmates have

[5]These were the plaintiffs Pina and Williams (unanimous votes), and the plaintiffs Doherty, Soffen, and Greenman (four-to-one votes).

[6]This was the plaintiff Hastings (three-to-two vote).

been retained in prerelease or minimum detention facilities despite multiple denials of parole. The present lawsuits followed the events set forth above.[7]

1. We reject the plaintiffs' argument that their reclassifications are invalid because the administrative order constituted a rule of general application that required compliance with the rule making process provided for by G. L. c. 30A.[8] "It is a recognized principle of administrative law that an agency may adopt policies through adjudication as well as through rulemaking," *Arthurs* v. *Board of Registration in Medicine,* 383 Mass. 299, 312-313 (1981), and "the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency." *Id.* at 313, quoting *SEC* v. *Chenery Corp.,* 332 U.S. 194, 203 (1947). See A. Cella, Administrative Law and Practice § 752 (1986 & Supp. 1996).

The commissioner can permissibly use adjudication to develop agency policy on the subject of inmate classification. The commissioner's statutory obligation to make appropriate classifications is stated in general terms,[9] and the commissioner presently discharges that obligation under a regulation that frames broad objectives and seeks to balance security requirements with the programmatic and other needs of inmates. See 103 Code Mass. Regs. § 420.07 (1995). The commissioner has authority to "transfer any sentenced

---

[7]Since the lawsuits' inception, two of the plaintiffs (Pina and Doherty) have been granted parole.

[8]We can dispense at this point with a threshold argument of the plaintiffs. They contend that the judge who decided the case lacked authority to do so because another Superior Court judge had previously entered orders, in response to the plaintiffs' request for preliminary relief, rescinding the administrative order, pending compliance with the notice and hearing requirements of G. L. c. 30A, and directing that new classification hearings be held for five of the plaintiffs. These orders were not appealed by the commissioner, and the plaintiffs claim that they "constitut[e] the law of the case," binding on the judge who considered the merits. The orders had no such effect. They were interlocutory in nature and designed to retain the status quo. The judge who had the cross motions for summary judgment before him had full power to deal with those motions and all issues involved in the merits without regard to the preliminary orders.

[9]General Laws c. 124, § 1 (*g*) (1994 ed.), provides that the commissioner is to "determine at the time of commitment, and from time to time thereafter, the custoα requirements and program needs of each person committed to the custody of the department and assign or transfer such persons to appropriate facilities and programs."

prisoner from one correctional institution of the commonwealth to another." G. L. c. 127, § 97 (1994 ed.). A prisoner cannot harbor a reasonable expectation of remaining at a particular prison, or in a particular custodial setting, so long as prison officials retain discretion to transfer him "for whatever reason or for no reason at all." *Meachum* v. *Fano,* 427 U.S. 215, 228 (1976). See *Lanier* v. *Fair,* 876 F.2d 243, 247 (1st Cir. 1989).

Considered in this context, the commissioner's administrative order sought to develop a classification policy as to a certain group of inmates which, among other issues, (a) allowed for flexibility in exceptional individual cases; (b) obtained wider use of prerelease facilities; (c) considered security requirements and the risks and dangers of escape; and (d) gathered data needed for possible additional refinements to the policy. Classification questions often demand subtle consideration of an amalgam of elements, some of which are factual, but many of which are subjective, based on knowledge and experience. The commissioner reasonably could issue the order, and eventually take into account the results of expected litigation by affected inmates who would test the application of the order to them through reclassification hearings and review of the results of these hearings.[10] This is, in substance, an appropriate adjudicatory approach to policymaking by an agency.

2. The plaintiffs argue that their transfers violated their Federal and State constitutional rights to due process. The plaintiffs maintain that a State-created liberty interest arises from the combination of five sources: (1) G. L. c. 124, § 1 (*g*) (1994 ed.), the general statute previously cited, see note 9, *supra,* which directs the commissioner to determine the custody needs of each inmate and assign or transfer each accordingly; (2) the classification regulation requiring that various procedures be afforded inmates being considered for

[10]Decisions made concerning individual inmates who are contesting their transfer to higher security must be explained in a written summary, see 103 Code Mass. Regs. §§ 420.08 and 420.09 (1995), and are subject to review under the standard that agency action may be overturned if it is "arbitrary, unreasonable or inconsistent with the plain terms" of the law and any applicable regulations. *Finkelstein* v. *Board of Registration in Optometry,* 370 Mass. 476, 478 (1976). See *Boston Police Superior Officers Fed'n* v. *Boston,* 414 Mass. 458, 462 (1993) (agency's interpretation of regulations and statute entitled to deference if rational and consistently applied).

transfer to higher custody, 103 Code Mass. Regs. § 420.09 (3) (a) (1995); (3) community work-release regulations, which require that the commissioner establish outside employment programs for inmates, 103 Code Mass. Regs. § 464.01 (1993), and that a classification committee determine in writing the suitability of inmates for work-release according to certain specified criteria, 103 Code Mass. Regs. § 464.09 (1) (B) (1993); and (4) the community release agreements that the plaintiffs signed in order to participate in work-release program. We do not agree with this contention.

(a) The plaintiffs' Federal due process claim is foreclosed by the decisions in *Sandin* v. *Conner,* 512 U.S. 472 (1995), and *Dominique* v. *Weld,* 73 F.3d 1156 (1st Cir. 1996). In the *Sandin* case, the United States Supreme Court expressed concern about its former doctrine, under which courts examined the language in State statutes and regulations to determine whether a liberty interest was created. The doctrine, according to the Court, "encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Id.* at 481. In the Court's view, this approach to inmate litigation created disincentives to the codification of prison management rules and procedures and involved the Federal courts in excessive day-to-day management of prisons. *Id.*

The Court held that States may still create liberty interests that afford prisoners Federal due process protections, but explained: "[T]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*" (emphasis added). *Id.* at 484. Applying this standard to the situation in *Sandin,* the Court concluded that disciplining a prisoner for thirty days in segregated confinement "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486.

The United States Court of Appeals for the First Circuit in the *Dominique* case applied the holding of the *Sandin* decision to an inmate who was removed from a prerelease facility despite his good standing in a work-release program and transferred to the Massachusetts Correctional Institution, at

Shirley, a medium-security facility. *Dominique, supra* at 1159. The court held that the removal and transfer did not, in the words of the *Sandin* case, constitute an "atypical hardship," and, consequently, no Federal right of due process had been violated.[11] *Id*. at 1160-1161. For this same reason, the plaintiffs' Federal due process claim fails here.

(b) We also discern no basis to support the plaintiffs' claim of a due process violation under the State Constitution. The general statute governing inmate custody assessments and needs, G. L. c. 124, § 1 (*g*), see note 9, *supra,* and the community work-release regulations and agreement, considered individually or collectively, do not limit the broad discretion afforded prison officials by imposing substantive standards governing either termination from a community-based program or reclassification to higher security. See *Dougan* v. *Commissioner of Correction,* 34 Mass. App. Ct. 147, 149 (1993); *Meachum* v. *Fano, supra* at 225-226. See also *Lanier* v. *Fair, supra* at 247. The commissioner's administrative order did not affect the duration of the plaintiffs' sentences or subject them to conditions different from those customarily applied to other inmates serving similar sentences for the same type of crime. There is no question that the plaintiffs have suffered a serious loss, and, to them, the commissioner's new policy appears unjust. But they cannot claim a liberty interest in continuing in work-release programs sufficient to suport a claim under the State Constitution that they were entitled to due process before what essentially constitutes a privilege could be revoked.

3. The plaintiffs assert that their reclassifications to higher security violated their statutory right to "kindness" under G. L. c. 127, § 32 (1994 ed.),[12] and their Federal constitutional right to equal protection. The plaintiffs claim that the commissioner's adjudicative decisions lack any rational basis and fail to "distinguish between an inmate who has been denied parole only twice from one who, for example, has been denied parole [fifteen] times."

---

[11]The Court of Appeals for the First Circuit also stated that the holding in *Sandin* v. *Conner,* 515 U.S. 472 (1995), applied retroactively. *Dominique* v. *Weld,* 73 F.3d 1156, 1160 n.6 (1st Cir. 1996).

[12]This statute reads as follows: "The superintendents of the institutions under the supervision of the department of correction shall treat the prisoners with the kindness which their obedience, industry and good conduct merit."

General Laws c. 127, § 32, has been construed to assure "equal treatment, *as far as may reasonably be,* for prisoners who are not being disciplined" (emphasis added). *Blaney* v. *Commissioner of Correction,* 374 Mass. 337, 341 (1978). As the defendants note the plaintiffs' assertion that the statute has been violated essentially calls for a rational basis analysis of the type applied to equal protection claims where there is no "fundamental interest" or inherently "suspect classification." See, e.g., *New Orleans* v. *Dukes,* 427 U.S. 297, 303 (1976).

The commissioner's reasons for establishing the policy are entitled to deference, and as the judge concluded, his reasons (in particular, concerns about the lack of security at pre-release facilities, the possible motivation of inmates who had been repeatedly denied parole to escape, and the unacceptable risk of danger to the community) cannot, as matter of law, be found to be irrational. The classification decisions also do not violate G. L. c. 127, § 32, or impinge on any equal protection concerns. The decisions are governed by the broad discretion granted prison officials and are not lacking in reasonable factual support or inconsistent with the objectives of classification. As the judge stated in his memorandum of decision: "Although the defendants have not submitted factual proof that second degree 'lifers' with two or more parole denials are more likely to escape than prisoners with shorter sentences, the court cannot conclude as a matter of law that the basis for the defendant[s'] classification is irrational."

4. The plaintiffs sought declaratory judgment and are entitled to receive it. The judgment is vacated. A new judgment is to be entered declaring that the administrative order in question is not invalid on any of the grounds claimed by the plaintiffs.

*So ordered.*