THOMAS D. TWOMEY & another[1] vs. COMMISSIONER OF FOOD
& AGRICULTURE & another.[2]

Suffolk. September 7, 2001. - December 14, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Agriculture. Real Property,* Agricultural preservation restriction.

This court concluded that an appeal from a decision of the Land Court was
not made moot by the sale of the farm that was the subject of the action
while cross motions for summary judgment were under advisement in the
Land Court, and that the purchaser of the farm was a proper intervener,
where the purchaser was the real party in interest, where there was no
disruption in the continuity of the prosecution of the plaintiff's claim, and
where the defendant did not assert any prejudice by the purchaser's
intervention at such a late stage. [500-501]
Where an agricultural preservation restriction (APR) required the Commis-
sioner of Food and Agriculture (commissioner) to make an individualized
factual determination about the effects of a proposed dwelling on the farm
subject to the APR and to determine whether those effects would defeat or
derogate from the intent and purposes of G. L. c. 184, § 31, the commis-
sioner could not impose a policy that created an irrebuttable presumption
that any dwelling would add value to the land such that the appreciation
would defeat or derogate from the intent and purpose of the statute.
[501-502]
Where an agricultural preservation restriction (APR) granted the Com-
monwealth the right to consider any effect a proposed dwelling would have
on the property subject to the APR, the Commissioner of Food and
Agriculture was not precluded from considering whether an increase in
property value resulting from construction of a new dwelling would defeat
or derogate from the intent or purposes of G. L. c. 184, § 31. [502-505]
Where an agricultural preservation restriction (APR) granted the Commis-
sioner of Food and Agriculture (commissioner) the right to deny a request
for a dwelling to be constructed on the property subject to the APR only
where the proposed dwelling defeated or derogated from the intent of G. L.
c. 184, § 31, the commissioner did not have an absolute power to deny
construction, and therefore could not impose a policy that conditioned ap-
proval on the granting to the Commonwealth of an option to purchase the
property. [505-508]

[1]Highland Farm, LLC, intervener.
[2]Department of Food and Agriculture (department), collectively referred to
throughout the opinion as the commissioner. Amicus briefs were filed by the
Conservation Law Foundation, Trustees of Reservations and Fredric Winthrop,
the Massachusetts Farm Bureau, and the New England Legal Foundation.

CIVIL ACTION commenced in the Land Court Department on August 31, 1998.

The case was heard by *Mark V. Green*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Ginny Sinkel*, Assistant Attorney General (*John E. Bowman, Jr.*, Assistant Attorney General, with her) for the defendants.

*SallyAnn Janulevicus* for the plaintiff.

*John H. Perten* (*Maura A. Gallagher* with him) for the intervener.

The following submitted briefs for amici curiae:

*Henry C. Porter* for Massachusetts Farm Bureau.

*Stephen H. Burrington* for Conservation Law Foundation.

*Gregory P. Bialecki & Brian S. Kaplan* for Trustees of Reservations and Fredric Winthrop.

*Michael E. Malamut* for New England Legal Foundation.

SPINA, J. A judge in the Land Court granted summary judgment for the plaintiff Thomas D. Twomey,[3] declaring that the Commissioner of Food and Agriculture (commissioner) may not, as a matter of policy, condition approval of the construction of a dwelling on property subject to an agricultural preservation restriction (APR)[4] on the grant to the Commonwealth of an op-

---

[3]The judge treated the plaintiff's motion for judgment on the pleadings as a motion for summary judgment. See Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974).

[4]General Laws c. 184, § 31, defines an agricultural preservation restriction as "a right, whether or not stated in the form of a restriction, easement, covenant or condition, in any deed, will or other instrument executed by or on behalf of the owner of the land appropriate to retaining land or water areas predominantly in their agricultural farming or forest use, to forbid or limit any or all (*a*) construction or placing of buildings except for those used for agricultural purposes or for dwellings used for family living by the land owner, his immediate family or employees; (*b*) excavation, dredging or removal of loam, peat, gravel, soil, rock or other mineral substance in such a manner as to adversely affect the land's overall future agricultural potential; and (*c*) other acts or uses detrimental to such retention of the land for agricultural use. Such agricultural preservation restrictions shall be in perpetuity except as released under the provisions of section thirty-two. All other customary rights and privileges of ownership shall be retained by the owner including the right to privacy and to carry out all regular farming practices."

tion to purchase the property. The policy at issue was adopted after the APR in this case was negotiated and purchased. The judge further declared that Twomey's APR does not permit the commissioner to refuse or condition such approval merely because the new dwelling would increase the value of the property, where the dwelling does not otherwise interfere with the use of the property for agricultural purposes. The commissioner appealed, and we transferred the case to this court on our own motion. We affirm the judgment of the Land Court to the extent that the judge's ruling is applicable to Twomey's APR.

The material facts are not in dispute. Twomey purchased 148 acres of unimproved farmland in Holliston, part of a farm known as Highland Hill Farm, for $70,000 in August, 1981. The land was subject to an APR executed by Twomey's immediate predecessor in title in July, 1981, for consideration of $220,000. The APR grants the Commonwealth the rights set forth in G. L. c. 184, § 31, and further provides that the owner of the land may construct a dwelling thereon only with the commissioner's prior approval. The APR states that "[a]pproval for such construction shall be granted only when such construction will not defeat or derogate from the intent and purposes of the Act."[5] Shortly after Twomey acquired the land, he requested and was given approval by the commissioner to build a dwelling on the land.

The commissioner has since adopted a written policy stating, in relevant part, that "[i]n order to prevent the creation of 'enhancement value' or 'estate value,'[6] approval [to construct a dwelling on APR property] shall be conditioned upon the grant-

[5]Statute 1977, c. 780, "An Act providing for the acquisition of agricultural preservation restrictions by the commonwealth," inserted §§ 11A-11D into G. L. c. 132A, and amended G. L. c. 184, §§ 31-33. The express legislative purpose of the Act, stated in the preamble, is "to provide for the protection and preservation of agricultural lands." Under the Act, the Secretary of Environmental Affairs is directed to establish a program, administered by the department, to assist the Commonwealth in the acquisition of agricultural preservation restrictions to preserve the agricultural potential of the Commonwealth.

[6]These terms are not defined in the written policy. The commissioner points to urbanization of once rural areas (which increases land prices, places farms out of the reach of newcomers to farming, and results in the acquisition of farms not for farming but as affordable single-family residential estates) as a

ing of an 'Option to Acquire at Agricultural Value' to the Commonwealth."[7] The option policy is predicated on a presumption (valuation presumption) that any new dwelling will make an APR property unaffordable for farmers to acquire, thus defeating the purpose of the Act.[8]

In 1998, Twomey put the farm on the market for the asking price of $700,000. Department employees, in response to inquiries from prospective purchasers, explained the terms of Twomey's APR and the commissioner's policy concerning construction of new dwellings on APR properties. Twomey claimed that the policy thwarted his efforts to sell the farm, and he brought this action in the Land Court seeking injunctive relief and a declaration that the commissioner had exceeded his authority in implementing the policy.

1. *Motion to dismiss appeal.* The commissioner has filed a motion to dismiss the appeal as moot because Twomey sold the farm to Highland Farm, LLC (Highland), while the cross motions for summary judgment were under advisement. A single justice of the Appeals Court permitted Highland to intervene. We are satisfied that Highland is a proper intervener. See Mass. R. Civ. P. 24 (a), 365 Mass. 769 (1974). Highland, now the real

significant threat to the APR program. This is a "loophole" in the Act, because there is no requirement that an APR property be used as a farm. It may be occupied for purely residential purposes. The consequences of such a change in use may be a change in the assessed value of the property as an agricultural or horticultural use, see G. L. c. 61A, § 4, and a liability for roll-back taxes under G. L. c. 61A, § 13, but the use would not violate the terms of the APR.

[7]"Agricultural value" is not defined in the option policy. The commissioner's use of the term makes it susceptible to three meanings: (1) the land value, as that term is used in G. L. c. 61A, § 4; (2) the land value plus the value of agricultural buildings; and (3) the market value of the property subject to the APR. See G. L. c. 132A, § 11B. The commissioner does not use the term to mean the land value plus the value of agricultural buildings *and dwellings.*

[8]The affidavit of the assistant commissioner, supporting the commissioner's cross motion for summary judgment, states: "The construction of a dwelling negatively impacts an APR property's value as an agricultural resource, does not automatically increase the agricultural viability of the property, and consumes a development right that has been bought and paid for by the Commonwealth. Most importantly, the construction of a dwelling enhances the market value of an APR property well beyond its agricultural value, creating an estate value resulting in a property that is unaffordable for purchase by full-time commercial farmers."

party in interest, joins in Twomey's action. Cf. *Berman* v. *Linnane*, 434 Mass. 301, 304 (2001). There has been no disruption in the continuity of the prosecution of Twomey's claim, and the commissioner does not assert any prejudice by Highland's intervention at this late stage. See *McDonnell* v. *Quirk*, 22 Mass. App. Ct. 126, 132-133 (1986).

2. *The valuation presumption.* The commissioner has argued that he had authority to deny *any* request to construct a dwelling on APR property because he had determined that any such construction would necessarily produce an increase in the value of APR property that would render the property unaffordable for farmers and thereby defeat or derogate from the intent and purposes of the Act. We turn to Twomey's APR, as it is the source of the commissioner's authority, to determine whether the commissioner has the authority he now claims.

An APR is a grant to the Commonwealth of the right to "forbid or limit" an owner's enjoyment of certain property rights. G. L. c. 184, § 31. Section 31 expressly excludes from the standard APR the right to restrict construction of a dwelling on APR property. However, the commissioner may bargain for and an owner may grant to the Commonwealth rights not enumerated under § 31. See *Bennett* v. *Commissioner of Food & Agric.*, 411 Mass. 1, 5 (1991). See also Restatement (Third) of Property (Servitudes) §§ 1.6, 2.6 comment d and Reporter's Note (1998). Here, the Commonwealth bargained for and acquired, in addition to the rights specified in § 31, the right, in the commissioner, to withhold approval for construction of a dwelling on the property if it would defeat or derogate from the intent and purposes of the Act.

The Commonwealth's right to approve a dwelling is a conservation servitude, or easement, in gross.[9] See *Bennett* v. *Commissioner of Food & Agric.*, *supra* at 6. The deed creating the easement must be "construed so as to give effect to the intent of the parties as manifested by the words used, interpreted in the light of the material circumstances and pertinent facts known to them at the time it was executed." *Gray* v. *Handy*, 349 Mass. 438, 440 (1965), quoting *Bessey* v. *Ollman*, 242

---

[9]An easement in gross is "a personal interest in or right to use land of another." *McLaughlin* v. *Selectmen of Amherst*, 422 Mass. 359, 364 (1996).

Mass. 89, 91 (1922). See Restatement (Third) of Property (Servitudes), *supra* at § 4.1 comment d. Twomey's APR requires two things of the commissioner when he decides whether to approve a request by Twomey to construct a dwelling. He must (1) make an individualized factual determination about the effects of the proposed dwelling on the farm, and (2) determine whether those effects would defeat or derogate from the intent and purposes of the Act.

The commissioner has created an irrebuttable presumption that any dwelling will add value to land such that the appreciation will defeat or derogate from the intent and purposes of the Act. The conclusive effect of this presumption deprives Twomey of the individualized determination to which he is entitled under his APR. Moreover, where the original parties to Twomey's APR agreed on a method for approval of a dwelling, it is reasonable to assume that they intended that some form of dwelling could be built that would not defeat the purposes of the Act and thus be acceptable to the commissioner. That was precisely the accommodation that Twomey and the commissioner reached before Twomey built his house. Because the valuation presumption precludes any showing that a dwelling could be built that does not derogate from or defeat the intent and purposes of the Act, something which the parties did not intend and which the Act does not contemplate, we conclude it violates the terms of the APR.[10]

3. *Consideration of value.* Twomey and Highland contend that the commissioner may never consider an increase in value of the property when determining whether to approve a request

---

[10]Highland argues that the presumption is invalid because it was not promulgated as a regulation in accordance with G. L. c. 30A, § 2. Although it is not clear how the presumption developed, "[i]t is a recognized principal of administrative law that an agency may adopt policies through adjudication as well as through rulemaking." *Arthurs* v. *Board of Registration in Medicine,* 383 Mass. 299, 312-313 (1981). The valuation presumption would fail even as an administrative policy because its conclusive effect denies owners the opportunity to refute it with evidence relevant to their particular circumstances. Cf. *Hastings* v. *Commissioner of Correction,* 424 Mass. 46, 50 & n.10 (1997) (administrative order creating classification policy upheld where prisoners entitled to refute policy at adjudicatory hearings). We stress, however, that the issues presented sound primarily in the law of property and the interpretation of deeds, not in administrative law.

to construct a dwelling because G. L. c. 184, § 31, implies that it is the policy of the Legislature to exempt dwellings and buildings used for agriculture from considerations applicable to other buildings. The flaw in the argument is that Twomey's predecessor granted to the Commonwealth the right to consider any effect a proposed dwelling would have on the property. Consideration of value is implicitly included. Twomey's APR does not preclude the commissioner from considering whether an increase in property value resulting from construction of a new dwelling would defeat or derogate from the intent or purposes of the Act. Notwithstanding the provision in § 31 excluding dwellings from control under an APR, if an owner agrees to include control of dwellings, as here, there is basis in the legislative history of the Act for considering the value of a proposed dwelling as part of the determination whether it will defeat or derogate from the intent and purposes of the Act.

The Legislature created the APR program because it was concerned with the preservation of affordable farmland for future agricultural use. The legislative commission assigned to investigate and report on preserving agricultural land in the Commonwealth found that "[i]ncreased operating costs have combined with rising land values to make it virtually impossible for young people or 'newcomers' to enter the farming business. As urbanization spills into formerly rural areas, developers and speculators bid up land prices. Potential farmers cannot afford to pay development prices, because the land's potential farm income cannot justify the capital investment." Second Interim Report of the Special Commission Relative to the Effects of Growth Pattern on the Quality of Life in the Commonwealth, 1976 House Doc. No. 5339, at 14. Central to the Act are the concerns of affordable farmland and farming as an economically viable endeavor in the Commonwealth. Neither Twomey nor Highland offer anything to suggest that the Legislature did not intend to give the department authority to deny a request to construct a dwelling on APR property that would leave the property unaffordable for farmers or potential farmers. Considering the legislative goals behind the Act, we conclude that the department may properly deny a request to

construct a dwelling if the dwelling would render the property unaffordable for farmers.[11]

Twomey next argues that there are no ascertainable standards pursuant to which the commissioner may deny a request to construct a dwelling based on an increase in property value that would defeat or derogate from the intent and purposes of the Act. Because neither Twomey nor Highland has submitted a

---

[11]The commissioner may not exclude circumstances of the existing owner from his consideration of affordability. The Legislature was concerned not only with the price of farms for the purchaser, but also with the preservation of agricultural lands in general. See St. 1977, c. 780, preamble. The concept of preservation of agricultural lands encompasses the over-all economic viability of farming. Twomey's circumstances are illustrative of the broader picture. Twomey purchased the farm in an unimproved condition. He subsequently requested and was given approval by the commissioner to build a dwelling. He incurred debt to build that home. Over the years he also incurred debt to construct agricultural buildings and to farm the property. His outstanding debt was approximately $440,000 at the time the cross motions for summary judgment were heard. The commissioner contends that Twomey was only entitled to the "agricultural value" of the property, its *land* value of $227,600, because that is .all he purchased. The market value of the property without the APR was $825,400. Under the terms of his APR, Twomey is not permitted to remove any dwelling or agricultural building, even if he paid for it. The record is silent as to the value of the APR land as improved by the dwelling and agricultural buildings Twomey constructed, and by his good will, items whose value, the commissioner argues, Twomey is not entitled to recoup. The record indicates that Twomey sold the farm for $650,000. After nearly twenty years of farming, Twomey realized the sum of $210,000 from the sale, including his $70,000 initial investment, after paying off his debt. Had he been unable to realize anything beyond the land value of the farm, his efforts would have resulted in undischarged debt of approximately $212,000.

The commissioner has used the term "agricultural value" in ways that are susceptible of several different meanings, resulting in considerable uncertainty. See note 7, *supra.* Before this action was filed, he suggested that the agricultural value Twomey was entitled to recover included the value of any improvements made to the property. At the summary judgment stage no such suggestion was made, and the commissioner held fast to the argument that Twomey was entitled to recover only the land value. In his appellate brief the commissioner suggests that agricultural value might include the value of agricultural improvements, but he makes no concession as to the dwelling, which he associates with the development "right" he claims Twomey gave up. Twomey's affidavit in support of summary judgment states that he "never [would agree] to sell the Commonwealth a benefit like the restriction on the value of my farm [limiting it to its land value]. All a farmer has [is] the value of his farm."

request for construction of a particular dwelling, the question is not properly before us and we do not consider it.

4. *The option policy.* The commissioner argues that his power to deny completely a request for the construction of a dwelling necessarily includes the power to approve something less, such as the power to condition approval on the grant to the Commonwealth of an option to purchase. The commissioner relies on *Fragopoulos* v. *Rent Control Bd. of Cambridge*, 408 Mass. 302, 304 (1990). In that case the owner of an apartment building with four units subject to rent control petitioned the rent control board for a permit to remove the building from its jurisdiction so that he could convert the building to an owner-occupied three-apartment building, the latter being exempt from regulation under the rent control ordinance. The board approved the request for a removal permit on condition that the building would retain its status as a four-apartment rent controlled building, and that on resale the building would either be returned to its prior use or continue to be owner occupied. *Id.* We upheld the decision of the board because the plaintiff failed to show that the board was required, as matter of law, to grant him an unconditional removal permit. We said that, because the board had discretion to deny the request completely, it could grant less than the full request, including a conditional approval. *Id.* The analogy to the *Fragopoulos* case is inapt because the commissioner's authority is determined by Twomey's APR, not by legislation.

We again consult Twomey's APR to ascertain the intent of the parties. As previously discussed, Twomey's APR contemplates that a dwelling may be constructed as long as it would not derogate from or defeat the intent and purposes of the Act. Assuming, without deciding, that the commissioner has the power to "deny completely" a request, that power is not absolute. That is, he does not have the power to deny completely a request for a dwelling that does not derogate from or defeat the intent and purposes of the Act. If the commissioner fairly determines that a proposed dwelling would defeat or derogate from the intent and purposes of the Act, it is reasonable that he has the power to approve the request if he also determines that modifications can be made to the dwelling that will remedy the

manner in which it offends the Act, and then condition approval on such modifications.

The option policy is a predetermination that no approval will be granted unless the owner grants to the Commonwealth an option to purchase.[12] Like the valuation presumption, application of the option policy deprives Twomey of an individualized determination under his APR. It forecloses all possibility that some dwelling can be built that does not derogate from or defeat the intent and purposes of the Act, a result that was not intended by the original parties or contemplated by the legislation to which the APR refers.

Application of the option policy to Twomey's APR is an improper attempt to acquire a property right that the original parties expressly agreed was reserved by the owner of the property. Twomey's APR, like § 31, states that "[a]ll other customary rights and privileges of ownership shall be retained by the owner . . . ." A customary privilege of ownership is an owner's ability to sell property at its highest value. Cf. *Dupee* v. *Boston Water Power Co.*, 114 Mass. 37, 43 (1873) ("The power to purchase and hold [property] implies the power to sell, and to sell upon such terms as to secure the highest price"). The commissioner contends that because he was granted authority to disapprove a dwelling that defeats or derogates from the intent and purpose of the Act, Twomey was divested of the right to realize all appreciation in the value of his property. The APR suggests otherwise. Notwithstanding the commissioner's claim as expressed in the affidavit of the assistant commissioner, see note 8, *supra*, the Commonwealth does not own the development rights to Twomey's property. It owns the right to restrict development. Twomey retains all "rights and privileges of ownership" to the property, and he may exercise those rights except as the commissioner may prevent him from doing so

---

[12]On appeal, the commissioner argues that his option policy requires the grant of the option only after a determination is made that the requested construction will actually impair the future agricultural viability of the APR property. The affidavit of the assistant commissioner indicates, however, that the determination is made in advance. As framed, the policy directs the department to condition approval on the grant of an option to purchase, as a *preventive* measure against the creation of "enhancement value" or "estate value."

under the terms of his APR. G. L. c. 184, § 31. Application of the option policy to Twomey's APR unilaterally amends the terms of his APR. As the judge in the Land Court noted, the commissioner "attempts, rather radically, to adjust the bargain of the parties reflected in the terms of the original APR." We hold that application of the option policy to Twomey's APR exceeds the authority of the commissioner.

The commissioner may permissibly bargain for an option to purchase property at a price that disregards any value attributable to a dwelling. In those circumstances, a farmer might build almost any type of dwelling without derogating from the intent and purposes of the Act. That has not occurred here. The commissioner's current practice is to obtain such an option when he negotiates an APR, a practice that is entirely permissible. That practice is the result of a determination made by the commissioner in the exercise of his administrative duties, after Twomey purchased his property, that a limitation on appreciation of farmland would further the purposes of the Act. We would be hard pressed to uphold a facial challenge to the prospective application of that policy. The commissioner may not, however, "acquire" such an option in the manner sought here, by unilateral application of the option policy to an existing APR that describes all the rights for which the parties bargained, and thereby substantially alter those rights.

Finally, the commissioner argues that he has inherent authority to condition approval of a dwelling on the grant of an option to purchase where he fairly has determined that construction of a proposed dwelling would produce an increase in value to the property that would derogate from or defeat the intent and purposes of the Act. We do not think he has such authority under Twomey's APR. Twomey's APR grants the commissioner the power to "forbid or limit" certain uses of the property, G. L. c. 184, § 31, and to approve the construction of a dwelling. His authority under the APR to approve conditionally a dwelling must fall within the limits of his authority to approve or deny a request for such construction. Specifically, he may, by granting a conditional approval, assist an owner to modify a proposed dwelling such that it will not offend the Act. In contrast, the granting of an option in exchange for approval of a

dwelling that offends the Act is a misuse of the approval process. Each element of this quid pro quo is beyond the limits of the approval process: the dwelling derogates from the intent and purposes of the Act, and consideration has been introduced into a process in which determinations are to be made without consideration. The Commonwealth should not be allowed to benefit in unintended ways from its execution of the approval process. The commissioner is free to negotiate for an option to purchase, but he may not make it a condition for approval of a proposed dwelling under an existing APR.

*Judgment affirmed.*