Raymond O. JACKSON

v.

Stephen H. NORRIS, et al.

3–86–1052.

United States District Court,
M.D. Tennessee,
Nashville Division.

Oct. 3, 1990.

Steven E. Winn, Asst. Atty. Gen., Nashville, Tenn., for defendants.

Raymond Otha Jackson, pro se.

## MEMORANDUM

JOHN T. NIXON, District Judge.

The Court is in receipt of the Report and Recommendation issued by the Magistrate

regarding the defendants' motions for summary judgment, and the plaintiff's objections to the Report and Recommendation.

## FACTS

The plaintiff Raymond Jackson, an inmate at the DeBerry Correctional Institute (Deberry), filed this suit under 42 U.S.C. § 1983 alleging that his legal mail had been opened outside his presence on several occasions and that this action deprived him of access to the courts in violation of the First and Fourteenth Amendments. Jackson alleges eight separate instances in which his mail was handled improperly.

The plaintiff sued Commissioner of Corrections Stephen Norris, Warden Michael Dutton, and mailroom clerk Michael Kendrick. The plaintiff claims that Commissioner Norris and Warden Dutton failed to respond to a grievance that he filed regarding the alleged problems with his mail, that Dutton failed to respond to a letter he wrote about his mail, and that both Norris and Dutton failed to adequately train the prison staff in the proper handling of inmate mail.

The Court referred the case to the Magistrate for consideration of its malicious or frivolous nature under 28 U.S.C. § 1915(d) and the Magistrate, determining that it was not frivolous, ordered the defendants to respond. The defendants then filed a motion for summary judgment[1], which the Magistrate recommended should be granted. This Court issued an order on April 20, 1989 adopting the recommendation and dismissing the case, which was subsequently

reversed by the Court of Appeals for the Sixth Circuit. *Jackson v. Norris*, 883 F.2d 75 (6th Cir.1989). The defendants then made motions for summary judgment on different grounds, which the Court referred to the Magistrate for consideration.

## DISCUSSION

### I. *The Law of the Case*

■ The Magistrate stated in the Report and Recommendation that the law of the case doctrine requires denial of the defendants' motions for summary judgment, because the Court of Appeals held in its order of August 16, 1989 that summary judgment is inappropriate in this action. This Court does not adopt that finding, however, because the earlier motions were based on different grounds than the presently pending motions, and it does not appear to this Court that the Sixth Circuit meant that summary judgment could not be granted on any of the issues in the case.[2] This interpretation is supported by the language of the Sixth Circuit's order, which states:

> *Because the grounds upon which the district court chose to grant summary judgment were incorrect,* we vacate the order of the district court and remand the case for further proceedings.

*Jackson v. Norris*, No. 89–5565, slip opinion at 3 [883 F.2d 75 (Table)] (emphasis added). Accordingly, the Court will consider the merits of the issues raised in the defendants' motions for summary judgment.

---

1. The defendants actually made a motion for judgment on the pleadings. Since the parties presented matters outside the pleadings to this Court, however, the Sixth Circuit Court of Appeals characterized the defendants' motion as one for summary judgment.

2. The Sixth Circuit's order of August 16 stated that summary judgment could not be entered for the defendants on the following two grounds:
   1. The alleged interference with the plaintiff's mail was an isolated incident, and;
   2. The plaintiff suffered no damages from the alleged interference.
   The pending motions, however, are based on the following grounds:

1. The defendant Kendrick's actions amount to no more than negligence, which is insufficient to state a claim under § 1983;
2. The defendants Norris and Dutton were not personally involved in the alleged violations of the plaintiff's rights;
3. Failure to respond adequately to an inmate's grievance does not state a claim under § 1983;
4. The plaintiff has not alleged sufficient facts to state a claim for failure to train subordinate state officers, and;
5. The defendants are protected by qualified immunity.

## II. The Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the U.S. Supreme Court explained the District Court's function in ruling upon a motion for summary judgment:

By its very terms, [the Rule 56(c)] standard provides that the mere existence of *some* alleged actual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted....

More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. 477 U.S. at 247–8, 106 S.Ct. at 2510. (emphasis in original) (citations omitted).

It is likewise true that "[i]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. (citations omitted). It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute.' " *Bohn*

*Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir.1962).

## III. The Plaintiff's Claim Against Mailroom Clerk Michael Kendrick

■ It is well established that prisoners have some First Amendment rights in receiving mail. *See Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Furthermore, courts have held that a prisoner's right to receive legal mail without interference from prison personnel is entitled to somewhat greater protection than the same right with regard to nonlegal mail, because of its significant impact on the prisoner's access to the courts. *Parrish v. Johnson,* 800 F.2d 600, 604 (6th Cir.1986); *Taylor v. Sterrett,* 532 F.2d 462, 477 (5th Cir.1976).

Prison officials may, however, place reasonable restrictions upon these rights in order to maintain security within the institution. The Supreme Court has held that inmate mail may be opened, pursuant to a uniform and evenly applied policy, to guard against contraband coming into the prison. *See Wolff v. McDonnell,* 418 U.S. 539, 574–77, 94 S.Ct. 2963, 2983–85, 41 L.Ed.2d 935 (1974).

In order to strike a balance between the prisoners' right to receive legal mail free from unreasonable interference by the prison staff and the state's need to maintain security, the Tennessee Department of Corrections has promulgated the following policy concerning legal mail received by prisoners:

*Privileged Mail:* Items received from attorneys, law students on behalf of attorneys, courts, laws schools that conduct legal aid clinic's [sic] within the institution, court clerks, any recognized legal defense fund, or government business officials. It shall not be opened for the purpose of inspection for contraband, except by the inmate addressee in the presence of a staff member. Such mail must bear the name, title of the official position of the sender or the addressee in order to be recognized as privileged.

Tennessee Department of Correction Policy # 507.03. Policy # 507.03 was explicitly

approved and adopted for the Middle District of Tennessee in a court order issued by Judge L. Clure Morton in 1984. *Buck v. Rose*, No. 82–3440 (December 7, 1984).

The Sixth Circuit Court of Appeals recognized in *Parrish v. Johnson*, 800 F.2d 600 (1986) that interference with a prisoner's incoming mail may be a violation of the prisoner's constitutional rights. The Court indicated that the mere opening of mail pursuant to a regularly applied regulation, or a random interference based on a reasonable suspicion of a security threat, does not rise to the level of a constitutional violation. Rather, the court set out the following standard:

"A capricious interference with a prisoner's incoming mail based upon a guard's personal prejudice violates the First Amendment."

*Parrish v. Johnson*, 800 F.2d at 604.

The plaintiff has alleged that the defendant Kendrick violated both his constitutional rights and Tennessee policy by opening, or otherwise interfering with, the plaintiff's receipt of several pieces of legal mail from 1986 through 1988. Specifically, the plaintiff has alleged the following:

1. On October 16, 1986 a check for $4.00 was mailed to the plaintiff from the Tennessee Claims Commission as a settlement offer in another case. Kendrick apparently opened the letter and deposited the check directly into the plaintiff's account, and this action constituted acceptance of the offer on the plaintiff's behalf.

2. A letter from Tennessee Governor Ned McWherter was delivered to him already opened on January 30, 1987.

3. On May 1, 1987 the plaintiff learned that a letter from attorney Martha Lionberger had been mailed to him, but the letter never arrived.

4. On May 20, 1987 a letter from the Chancery Court to the plaintiff was misdirected to another inmate named Jackson, but was delivered to the plaintiff later in the same day.

5. On October 1, 1987 Assistant Attorney General Odell Horton told the plaintiff that he had sent him a pretrial order that the plaintiff never received.

6. On two separate occasions in 1988 letters from the Reverend Jesse Jackson concerning his presidential campaign were delivered to the plaintiff already opened.

7. On June 28, 1988 a letter from attorney Ellen Barry, addressed to the plaintiff, arrived opened. The letter was stamped "Opened in Error" and was marked with the defendant's initials "M.K."

Michael Kendrick is the supervisor of four employees in the prison post office at Deberry. These five employees are responsible for handling all of the mail for approximately 800 inmates housed at the facility. Evidentiary Hearing before the Magistrate ("Hearing"), at 37–39. In accordance with the policy regarding legal mail, the post office staff sorts the mail into privileged and nonprivileged piles before any mail is opened. Kendrick estimated that the post office receives from 300–500 pieces of mail each day, and that he personally handles approximately 150 pieces each day. Hearing, at 38–39. The plaintiff alone received approximately 200 pieces of mail from October, 1986 through April, 1990 and he estimated that half of the mail was legal or court related. Deposition of the Plaintiff, p. 22.

■ The Court finds that the two campaign letters from presidential candidate Jesse Jackson cannot be considered privileged, since Jesse Jackson is neither an attorney nor a government official under the definition given in the Tennessee policy. Therefore, as a matter of law there can be no violation with respect to these two letters, because the defendant is required to open all mail other than that which is defined as privileged.

The plaintiff admits that the misdirection of the letter from the Chancery Court, which was mistakenly sent to another inmate in the plaintiff's housing unit, was the fault of the unit manager rather than the defendant. Plaintiff's Deposition, pp. 26–27.

■ Kendrick explained his depositing of the check from the Claims Commission by

stating that it is normal procedure for all checks received by inmates to be deposited directly into their prison accounts. He stated that the reason he did not follow Policy # 507.03 and open the letter in the presence of the plaintiff is that he was not aware that the Claims Commission was a "court" within the meaning of TDOC policy # 507.03. Hearing, at 41. The plaintiff has not alleged any facts that contradict Kendrick's explanation for the error, or that suggest that Kendrick's actions amounted to more than ordinary negligence.

The defendant admits that he opened the letter from attorney Ellen Berry on June 28, 1988 in error, because it was mistakenly placed in a pile of nonlegal mail which the defendant was supposed to open. In keeping with proper procedure, the defendant wrote on the letter "opened in error" and marked it with his initials.

Finally, the plaintiff has not alleged sufficient facts to show that the defendant Kendrick personally handled the letter from Governor McWherter that allegedly arrived opened, or the two letters that allegedly never arrived. Even if the plaintiff could show that the defendant handled these letters, there are no allegations that he was motivated by prejudice or animus towards the defendant.

In sum, the allegations against defendant Kendrick amount to nothing more than missorting several letters over a two and a half year period. Even when the plaintiff's claims are given the indulgent treatment required under Rule 56, the Court finds that the conduct of defendant Kendrick amounts to no more than negligence. The plaintiff does not allege any facts which would suggest that Kendrick was motivated by a "personal prejudice" towards the plaintiff, that Kendrick intended to interfere with the plaintiff's access to the Courts, or otherwise acted in a "capricious" manner.[3]

In *Parrish v. Johnson,* the Sixth Circuit decision which holds that repeated interference with incoming mail can be a constitutional violation, the defendant's conduct went far beyond ordinary negligence; the interferences with mail in that case were part of a shocking pattern of abusive conduct which clearly demonstrated a capricious disregard for the plaintiff's constitutional rights. *Parrish v. Johnson,* 800 F.2d at 602–603. For example, the prison guard in *Parrish* not only opened the plaintiff's legal and personal mail, he routinely taunted the plaintiff, a paraplegic, by reading his mail aloud and waving the letters in front of him.[4] Kendrick, on the other hand, took no action which indicated a personal prejudice or animus towards the plaintiff or his mail. On the contrary, Kendrick appears to have made efforts to correct his mistakes when possible, as evidenced by his placing his initials and the notation "opened in error" on at least one of the letters which was mishandled.

Although a plaintiff is not required to allege facts as morbid as those in *Parrish* to state a constitutional claim for interference with mail, this Court interprets *Parrish* to mean that mere negligence is not sufficient to constitute a "capricious interference ... based upon personal prejudices." This interpretation is consistent with the general rule that negligence is not enough to state a claim under § 1983. *See*

---

**3.** The Court is cognizant of the Court of Appeals' holding in its August 16, 1989 order that the plaintiff's claim cannot be dismissed simply because he is unable to prove any harm. *See Parrish v. Johnson,* at 800 F.2d 606–607 (general damages are presumed for a First Amendment violation). Rather, the Court finds that there is no proof that Kendrick had any intent to deprive the plaintiff of his rights, and therefore the plaintiff has not stated a claim under the standard articulated in *Parrish.*

**4.** In addition to the mail violations, the guard in *Parrish* abused the paraplegic inmate in the following ways: by routinely forcing the plaintiff to sit in his own feces for several hours; calling the plaintiff a "crippled bastard who should be dead;" threatening the plaintiff with a knife in order to extort cigarettes and cookies from him; refusing to allow the plaintiff access to medical care; placing the plaintiff's food in positions where he could not reach it; interfering with personal telephone calls by grabbing the receiver and yelling obscenities; telling the plaintiff that he had defiled his food with a venereal disease (a disease which the guard, in fact, had).

*Molton v. City of Cleveland,* 839 F.2d 240, 247 (1988); *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Since the allegations in this case, viewed in a light most favorable to the plaintiff, amount to no more than negligence by Kendrick, the Court finds that there are no genuine issues of material fact. Accordingly, summary judgment will be GRANTED on behalf of the defendant Michael Kendrick.

### IV. *The Plaintiff's Claims against the Defendants Norris and Dutton*

The plaintiff has also sued Tennessee Commissioner of Corrections Stephen Norris and DeBerry Warden Michael Dutton. It is not alleged that these two defendants were personally involved in mishandling the mail. The plaintiff's claims against Norris are based upon failure to train subordinates and failure to respond properly to a grievance about the matter; the claims against Dutton stem from allegations that Dutton did not respond to a letter the plaintiff mailed on October 18, 1986, and that he failed to respond adequately to the grievance filed by the plaintiff.

In order to recover under § 1983 the plaintiff must show that the defendant was somehow personally involved in the deprivation of the plaintiff's rights. *Dunn v. Tennessee,* 697 F.2d 121, 128 (6 Cir.1982). Since the Court has determined that the actions of Kendrick do not amount to anything more than negligence, and therefore do not state a constitutional deprivation under § 1983, it is not necessary to reach the issues of Norris's and Dutton's liability, or whether they are protected by qualified immunity; if the actions of Kendrick do not state a basis for relief, then the plaintiff's claims against his superior officers must fail. Accordingly, the defendants' motion for summary judgment on behalf of Norris and Dutton is hereby GRANTED.

An appropriate Order will be entered contemporaneously with this opinion.

ORDER

Presently before the Court is the plaintiff's motion to ascertain the status of the case, the Report and Recommendation of the Magistrate, and the defendants' objections. For the reasons stated in the accompanying Memorandum the Court REJECTS the Magistrate's recommendations, and hereby GRANTS the motion for summary judgment on behalf of defendant Kendrick and in addition GRANTS the motion for summary judgment on behalf of defendants Norris and Dutton.