# 'Omar 'Abdullah *vs.* Secretary of Public Safety & others.[1]

No. 96-P-188.

Suffolk. November 18, 1996. - March 28, 1997.

Present: Brown, Dreben, & Smith, JJ.

*Imprisonment,* Transfer of prisoner, Reclassification of prisoner. *Due Process of Law,* Prison regulation, Prison classification proceedings. *Constitutional Law,* Imprisonment. *Civil Rights,* Coercion. *Regulation. Administrative Law,* Agency, Regulations. *Practice, Civil,* Summary judgment.

A State prison inmate had no liberty interest protected by the due process clause of the Fourteenth Amendment to the United States Constitution or art. 12 of the Massachusetts Declaration of Rights in a particular reclassification and transfer procedure defined by State regulations, as would give rise to a right to damages or any other remedy than a new reclassification hearing for the failure of the Department of Correction to have followed the correct procedures in reclassifying the inmate. [390-391, 393]

Where the Department of Correction did not comply with its own regulations in transferring an inmate for security reasons to a higher security placement, the State prison inmate was entitled to a new classification hearing. [391-392]

Summary judgment was incorrectly entered in an action brought under 42 U.S.C. § 1983, for violation of rights under the Eighth Amendment to the United States Constitution and art. 26 of the Massachusetts Declaration of Rights, and the matter was remanded for further proceedings. [393-396]

Judgment was · orrectly entered for Department of Correction defendants on a State pri on inmate's claim that a single incident of alleged interference with his mail and one other incident of alleged denial of visitation constituted a violation of 'he inmate's constitutional rights. [396]

Judgment was properly entered for Department of Correction defendants on a State prison inmate's claims under G. L. c. 12, §§ 11H & 11I, where there was no showing that the defendants' alleged actions were accompanied by "threats, intimidation or coercion." [396-397]

A State prison inmate's claims under G. L. c. 30A and G. L. c. 127, § 32,

[1]The Commissioner of Correction and eight other employees of the Department of Correction.

including equal protection claims, arising out of the prisoner's securing reclassification and transfer were precluded for reasons set forth in *Hastings* v. *Commissioner of Correction*, 424 Mass. 46, 49-50, 52-53 (1997). [397]

CIVIL ACTION commenced in the Superior Court Department on March 24, 1995.

The case was heard by *Vieri Volterra*, J., on a motion for summary judgment.

*Charles M. Wyzanski* for the Secretary of Public Safety & others.

*'Omar 'Abdullah*, pro se.

DREBEN, J. The plaintiff, 'Abdullah, an inmate in the custody of the Department of Correction (department), brought this action against the defendants following his transfer in 1992 from the Massachusetts Correctional Institution (M.C.I.), Lancaster, a minimum security facility, to M.C.I., Concord, a medium security facility. The primary thrust of 'Abdullah's pro se complaint is that the defendants violated his Federal and State constitutional rights, as well as departmental regulations, by transferring him prior to a reclassification hearing and without informing him either before or after the hearing of the reasons for the transfer. He also claims that the conditions of his confinement at M.C.I., Concord, were in violation of his constitutional rights. 'Abdullah sought declaratory and injunctive relief and damages. A judge of the Superior Court, presented with cross motions for summary judgment, allowed, in part, both parties' motions and awarded 'Abdullah compensatory and punitive damages. Both parties have appealed.

The undisputed facts, gleaned from the summary judgment materials, are as follows. Since 1969, 'Abdullah has been imprisoned as a result of convictions described by the judge as robbery and rape of a child under sixteen years of age. During his confinement, he has been a "model inmate." He has received no disciplinary reports, demonstrated an excellent work record, adjusted to the prison environment and participated in prison rehabilitation programs. From 1983 to 1992, 'Abdullah was housed at a minimum security facility. Prior to 1983 he had held an honor position as trustee at M.C.I., Norfolk, which allowed him to work outside the walls

of the facility. He has had 103 furloughs since 1985, all of which have proceeded without incident.

In July, 1991, prison administrators at M.C.I., Lancaster, approved 'Abdullah's request for early parole consideration (one-third of his minimum sentence) based on his exemplary prison record. The parole board, however, denied 'Abdullah's request for early release. In early June, 1992, Lancaster officials (by a four-to-one vote) again recommended early parole consideration for 'Abdullah. Prior to any action by the parole board, and without a reclassification hearing, the Commissioner of Correction (commissioner) ordered 'Abdullah transferred to M.C.I., Concord, as he was deemed a "security" risk.

That he was considered a security risk was not told to 'Abdullah and, in fact, no explanation of any kind for the transfer was given to him. Upon his arrival at Concord, 'Abdullah was forced to sleep for six days on a concrete floor due to overcrowding at the facility. On August 11, 1992, 'Abdullah was given a reclassification hearing, and was subsequently reclassified to medium security status and transferred to the Bay State Correctional Center.

On these facts, and upon review of various regulations pertaining to the reclassification of inmates and the conditions of their confinement, the motion judge concluded that all but three of the defendants had violated 'Abdullah's Federal and State due process rights, as well as regulations binding on the department.[2] [3] He awarded 'Abdullah damages pursuant to 42 U.S.C. § 1983 in the sum of $8,400 for the "unlawful transfer," and $1,500 for the six nights he was forced to sleep on the floor. Finding also that the defendants' actions reflected "a reckless and callous indifference" to 'Abdullah's rights, the judge awarded him punitive damages of $25,000. The defendants' motion for summary judgment was allowed on 'Abdullah's remaining claims under 42 U.S.C.

[2]The judge properly dismissed the plaintiff's claims against three of the defendants.

[3]The judge ruled that the hearing requirements for transfer situations, 103 Code Mass. Regs. §§ 420.08 and 420.09, and certain public health regulations requiring beds for inmates were violated. See 105 Code Mass. Regs. § 451.104. He also ruled that the failure to provide 'Abdullah with a bed at Concord was cruel or unusual punishment in violation of art. 26 of the Massachusetts Declaration of Rights.

§§ 1983, 1986 & 1988, and G. L. c. 12, §§ 11H & I, c. 127, § 32, and c. 30A.

We first discuss the matters raised in the defendants' appeal.

1. *Transfer to higher security status.* (a) *'Abdullah's claim for damages under § 1983.* Relief under 42 U.S.C. § 1983 requires a showing that the defendants denied the plaintiff a constitutional or Federal statutory right and that such denial was effected under color of State law. See *Adickes* v. *S.H. Kress & Co.,* 398 U.S. 144, 150 (1970); *Temple* v. *Marlborough Div. of the District Court Dept.,* 395 Mass. 117, 122 (1985); *Martino* v. *Hogan,* 37 Mass. App. Ct. 710, 714 (1994).

'Abdullah bases his constitutional claim of improper classification on the due process clause of the Fourteenth Amendment to the United States Constitution.[4] See *O'Malley* v. *Sheriff of Worcester Cty.,* 415 Mass. 132, 135 (1993). The judge, while acknowledging that 'Abdullah had no protected liberty interest in a particular security grade or location of confinement derived from the due process clause itself, see *Martino* v. *Hogan,* 37 Mass. App. Ct. at 714, citing *Meachum* v. *Fano,* 427 U.S. 215 (1976), and *Montanye* v. *Haymes,* 427 U.S. 236 (1976), concluded that the State, through its reclassification regulations, see section 1(b) of this opinion, *infra,* had created a liberty interest by mandating a procedure that was "due." This reasoning is now foreclosed by *Sandin* v. *Connor,* 515 U.S. 472 (1995), as clarified by two cases issued after the judge's decision, *Dominique* v. *Weld,* 73 F.3d 1156, 1160-1161 (1st Cir. 1996), and *Hastings* v. *Commissioner of Correction,* 424 Mass. 46, 50-52 (1997). These cases establish that transfers such as complained of by the plaintiff do not fall within the Federal due process protection which States may still create because such transfers do not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 51, quoting from

---

[4]'Abdullah's claims for damages against the defendants must be viewed as against them only in their individual capacities. "State officials sued for damages in their official capacity are not 'persons' under § 1983 because the law treats the action as [one] against the official's office and hence against the State." *O'Malley* v. *Sheriff of Worcester Cty.,* 415 Mass. 132, 141 n.13 (1993). *Laubinger* v. *Department of Rev.,* 41 Mass. App. Ct. 598, 602 (1996).

*Sandin,* at 484.[5] Measured by this standard, 'Abdullah's claim of a liberty interest, the violation of which gives rise to a right to damages under § 1983, must fail.

(b) *'Abdullah's claims that the transfer violated departmental regulations.* The regulations pertaining to the transfer of inmates for security reasons to a higher security placement, as set out in 103 Code Mass. Regs. §§ 420.09(3)(a) and 420.08(6)(a)-(i)(1992), and reproduced in the appendix to this opinion, entitle an inmate, who is considered for such a transfer, to a classification hearing. Normally, the hearing should be held prior to an inmate's transfer, although, when security needs dictate, the hearing may be held within twenty working days following the transfer. These time limits are explicitly stated to be directory and may be waived. 103 Code Mass. Regs. § 420.12 (1992).

An inmate is also entitled to written notice of such a hearing containing, among other things, the reasons for the hearing. Any decision made by the classification board to an inmate contesting the transfer to higher security must be explained in a written summary. *Hastings* v. *Commissioner of Correction,* 424 Mass. at 50 n.10. An inmate who is not in agreement with a classification board's recommendation may appeal in writing to the superintendent.

"Once an agency has seen fit to promulgate regulations, it must comply with those regulations. . . . [They] have the force of law." *Royce* v. *Commissioner of Correction,* 390 Mass. 425, 427 (1983). *Good* v. *Commissioner of Correction,* 417 Mass. 329, 332 (1994). *Stokes* v. *Commissioner of Correction,*

---

[5]In *Sandin,* the Court retreated from its former doctrine under which courts examined the language in State statutes and regulations to determine whether a liberty interest had been created. Such an approach had, the Court noted, resulted in at least two undesirable effects: it had produced "disincentives for States to codify prison management procedures in the interest of uniform treatment," and it had led to the involvement of Federal courts in the day-to-day management of prisons. 515 U.S. at 482. The Court held that while States may in certain circumstances create liberty interests which are protected by the due process clause, those interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

The holding in *Sandin* has retroactive application. See *Hastings* v. *Commissioner of Correction,* 424 Mass. at 52 n.11.

26 Mass. App. Ct. 585, 588 (1988).[6] 'Abdullah alleged in his verified complaint and affidavit, and it is not disputed by the defendants in verified form,[7] that they did not inform him of the reasons for his transfer either before or after the classification hearing.[8] These undisputed statements indicate that the department did not comply with its regulations. Without notice that he was being transferred as a security risk, 'Abdullah could not meaningfully appear before the board or submit a written appeal to the superintendent. See 103 Code Mass. Regs. §§ 420.08(6)(d) and (6)(h); 420.09(3)(b). In view of the department's failure, 'Abdullah is entitled to a new classification hearing. Cf. *Nelson* v. *Commissioner of Correction*, 390 Mass. 379, 398 (1983).[9]

[6]The judge faulted the decision of the commissioner that the plaintiff was a security risk as being arbitrary, not based on substantial evidence and made for external political consumption. The classification procedures set forth in the regulations do not require that classification decisions be based on substantial evidence. *Dougan* v. *Commissioner of Correction*, 34 Mass. App. Ct. 147, 150 (1993). Such decisions may be overturned if "arbitrary, unreasonable or inconsistent with the plain terms" of the law. *Hastings* v. *Commissioner of Correction*, 424 Mass. at 50 n.10. The judge noted in another portion of his memorandum that he could not conclude as matter of law that the defendants' offered explanation for the transfer (i.e., that 'Abdullah might attempt to escape from the minimum security facility if his request for early parole were denied) was irrational. See also *Hastings*, supra at 53.

[7]'Abdullah attached to his complaint a "summary/key issues" sheet from the classification board of the department on which there is a typed notation that he was "[p]roperly notified of [the] hearing." This conclusory statement, which is not attributed to a specific individual or made under oath, fails to state specifically whether 'Abdullah was informed of the reasons for the hearing. There is no statement on the sheet suggesting that 'Abdullah had been deemed a security risk, and the board's recommendation on the sheet contains no explanation of its decision to transfer 'Abdullah to higher security.

[8]Indeed, the plaintiff represents that he did not become aware that he had been transferred for security reasons until after he filed suit in the present case.

[9]We do not suggest the outcome of the hearing. The department may hold the hearing at the time of 'Abdullah's next six-month review, see 103 Code Mass. Regs. § 420.09(1) (1995), *Good* v. *Commissioner of Correction*, 417 Mass. at 332, or at any earlier time. At the hearing, 'Abdullah may address the "security issue" upon which his transfer to higher security was premised, and the department may consider among other things, circumstances subsequent to the August, 1992, hearing which bear on his placement.

In view of the commissioner's broad discretion to transfer inmates, see

(c) *Abdullah's claim that the transfer violated art. 12 of the Massachusetts Declaration of Rights.* This State due process claim would appear to be foreclosed by the decision in *Hastings* v. *Commissioner of Correction,* 424 Mass. at 52, which holds that the statute and regulations at issue in that case did not limit the broad discretion afforded prison officials by imposing substantive standards governing reclassification to higher security. No additional regulations or statutes imposing substantive standards are cited to us here. In any event, 'Abdullah would be entitled to no greater relief under art. 12 than we have outlined in our discussion of the department's violation of its regulations. See *Martino* v. *Hogan,* 37 Mass. App. Ct. at 720-721. Cf. *Good* v. *Commissioner of Correction,* 417 Mass. at 332.

2. *Conditions of confinement — sleeping arrangements.* The defendants argue that the judge erred in awarding 'Abdullah damages under 42 U.S.C. § 1983 for the six days he was forced to sleep on the floor due to overcrowding at M.C.I., Concord. Although they argue that the conditions imposed upon 'Abdullah do not violate the Eighth Amendment to the United States Constitution or art. 26 of the Massachusetts Declaration of Rights, they also assert that any "reasoned determination" of those questions can only be made upon a more fully developed factual record. The defendants also argue that they are entitled to qualified immunity.

Unlike pretrial detainees who may not be punished at all, *Richardson* v. *Sheriff of Middlesex Cty.,* 407 Mass. 455, 461 (1990), convicted prisoners may be punished as long as the punishment is not cruel and unusual under the Eighth Amendment.[10] See *Ingraham* v. *Wright,* 430 U.S. 651, 671-672 n.40 (1977); *Bell* v. *Wolfish,* 441 U.S. 520, 535 n.16

---

*Dougan* v. *Commissioner of Correction,* 34 Mass. App. Ct. at 149, and the defendants' assertion below that 'Abdullah has been in a higher security facility since September 30, 1993, as a result of his refusal to undergo counseling, subsequent events may have overtaken the plaintiff's claims.

[10]The judge concluded that the conditions to which 'Abdullah was subjected constituted cruel or unusual punishment in violation of art. 26 of the Massachusetts Declaration of Rights. He also held that the department's action violated regulations which required that inmates be provided with a bed above floor level. The judge inadvertently cited 103 Code Mass. Regs. §§ 920.06(2)(6) and 920.07 (recommended standards applicable to *county* correctional facilities), instead of 105 Code Mass. Regs. § 451.104, which

(1979); *Miga* v. *Holyoke*, 398 Mass. 343, 350 (1986); *Richardson* v. *Sheriff of Middlesex Cty.*, 407 Mass. at 461. See also *Farmer* v. *Brennan*, 511 U.S. 825, 832 (1994). A prison official violates the Eighth Amendment when two requirements are met. First, "the deprivation alleged must be, objectively, 'sufficiently serious,'. . . [it] must result in the denial of 'the minimal civilized measure of life's necessities.' " *Farmer* v. *Brennan*, 511 U.S. at 834. Second, the prison official must have a sufficiently culpable state of mind, that is, the official must have "deliberate indifference" to the inmate's health or safety. *Ibid.* Thus, to be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement, a prison official must know and disregard an excessive risk to inmate health or safety. *Id.* at 837. It would appear that art. 26 of the Declaration of Rights has the same two requirements.[11]

We conclude that, to the extent 'Abdullah's allegations implicate the Eighth Amendment or art. 26, neither 'Abdullah nor the defendants were entitled to summary judgment.[12] The burden was on the defendants, on *their* motion for summary judgment, to show by credible evidence from affidavits or other supporting materials that there was no issue of mate-

is applicable to all correctional facilities. He ruled that requiring the plaintiff to sleep on the floor was a violation of his due process rights, and, as indicated earlier, awarded damages pursuant to 42 U.S.C. § 1983. We consider it unnecessary to treat separately any substantive due process claims relating to the conditions at M.C.I., Concord, in view of our analysis of them under the Eighth Amendment and art. 26. See *Miga* v. *Holyoke*, 398 Mass. 343, 350-351 (1986).

[11]The judge's statement in his memorandum of decision that there is no "deliberate indifference" requirement under art. 26 appears inconsistent with *Good* v. *Commissioner of Correction*, 417 Mass. at 336 & n.7, and the concurring opinion of Justice Abrams, at 339 & n.3. Cf. *Jackson* v. *Commissioner of Correction*, 39 Mass. App. Ct. 566, 568-569 (1995).

[12]The defendants' motion was styled as one to dismiss pursuant to Mass.-R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), or, in the alternative, for summary judgment pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974). The defendants have requested that we review the matter using summary judgment standards and we consider that standard appropriate, cf. *Lawrence* v. *Cambridge*, 422 Mass. 406, 407 (1996), particularly since the judge may have taken as additional facts admissions of counsel made during a telephone conference hearing of which we have no transcript. (The judge's finding that the plaintiff slept on a concrete floor may have been based on such an admission.) See *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 126 (1982).

rial fact and that they were entitled, as matter of law, to judgment. Although a party moving for summary judgment need not submit affirmative evidence to negate one or more elements of the other party's claim, he must demonstrate, by reference to Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974), materials, that the party who will have the burden of proof at trial has no reasonable expectation of meeting it. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). *Smith* v. *Massimiano*, 414 Mass. 81, 85-86 (1993). Here, the defendants failed to file an affidavit or other rule 56 materials which address the question of "deliberate indifference" (the second part of the two-part inquiry set out in *Farmer*) or which demonstrate that 'Abdullah would be unable to prove his case at trial. Consequently, 'Abdullah was not obligated to present any countervailing proof on the issue. *Smith* v. *Massimiano*, 414 Mass. at 86-87. Compare *Richardson* v. *Dailey*, 424 Mass. 258, 263-264 (1997). Moreover, as previously indicated, the defendants acknowledge that in determining whether 'Abdullah was deprived of the minimal civilized measure of life's necessities (the first part of the two-part inquiry set out in *Farmer*), the particulars of 'Abdullah's sleeping quarters would undoubtedly have to be considered.[13]

Nor is 'Abdullah entitled to summary judgment on his Eighth Amendment or art. 26 claims.[14] Among other things, he has failed to show that any of the named defendants even knew of the condition to which he was subjected, much less

[13]Regulations such as 105 Code Mass. Regs. § 451.104, cited earlier, which provides that each inmate shall be supplied with "a bed and bedspring or platform raised above the floor and in good condition," may also be relevant, see *Michaud* v. *Sheriff of Essex Cty.*, 390 Mass. 523, 533 (1983), although State minimum standards may be designed to provide conditions of incarceration better than those constitutionally mandated. *Richardson* v. *Sheriff of Middlesex Cty.*, 407 Mass. at 460. See also *Good* v. *Commissioner of Correction*, 417 Mass. at 335-336; *Strachan* v. *Ashe*, 548 F. Supp. 1193, 1202 (D. Mass. 1982); *Masonoff* v. *DuBois*, 899 F. Supp. 782, 799 (D. Mass. 1995).

[14]The short term nature of the conditions to which 'Abdullah was subject and its cause, i.e., overcrowding, are of course relevant in assessing 'Abdullah's claims. See *Hutto* v. *Finney*, 437 U.S. 678, 686-687 (1978) (prison conditions which might be tolerable for a few days may be intolerably cruel for weeks or months). Cf. *Libby* v. *Commissioner of Correction*, 385 Mass. 421, 432 (1982); *Gerakaris* v. *Champagne*, 913 F. Supp. 646, 651 (D. Mass. 1996) (while duration of confinement is a consideration, it must be measured against the intolerable character of the conditions endured and the egregiousness of the defendants' conduct).

that they knew that he faced a substantial risk of harm as a result of that condition and failed to take reasonable measures to abate it. See *Farmer* v. *Brennan*, 511 U.S. at 837, 842-844. As the constitutional issue raised should be adjudicated upon a more fully developed factual record, the award of damages on the plaintiff's conditions of confinement claim is vacated and the matter remanded to the Superior Court for further proceedings.[15]

We now turn to 'Abdullah's appeal.

3. *Interference with mail and visitation.* Although the First Amendment to the United States Constitution bears upon the right of prisoners to receive mail, *Jackson* v. *Norris*, 748 F. Supp. 570, 572 (M.D. Tenn. 1990), aff'd, 928 F.2d 1132 (6th Cir. 1991), citing *Pell* v. *Procunier*, 417 U.S. 817, 822 (1974); see also *Champagne* v. *Commissioner of Correction*, 395 Mass. 382, 386-387 (1985); *Miller* v. *Commissioner of Correction*, 36 Mass. App. Ct. 114, 118 (1994), the single specific incident of "interference" to which 'Abdullah points in his complaint and attached materials involves a situation where a letter sent by his mother to him had been returned to her stamped "Return to Sender" and "Not at Box 00." The judge was correct in concluding that this isolated event does not support a claim of constitutional violation. Cf. *Jackson* v. *Norris*, 748 F. Supp. at 574-575. For similar reasons, the judge was correct in finding no merit in 'Abdullah's claim of constitutional violation arising from the "denial" of visitation. Although in the one specific incident cited by the plaintiff, there was confusion among members of the correctional staff as to where 'Abdullah was housed, it is clear that the staff went to great lengths to assist 'Abdullah's mother in her attempt to locate him.

4. *Additional issues.* Judgment was properly entered for the defendants on 'Abdullah's claim under the State Civil Rights Act, G. L. c. 12, §§ 11H & 11I, because the defendants' actions were not accompanied by "threats, intimidation or coer-

[15]Upon remand, the defendants may press their entitlement to qualified immunity. As the conditions of 'Abdullah's confinement may bear on this question, we do not comment on this issue. See *DiMarco* v. *Rome Hosp. and Murphy Mem. Hosp.*, 952 F.2d 661, 666 (2d Cir. 1992); *Davidson* v. *Coughlin*, 920 F. Supp. 305, 310 (N.D.N.Y. 1996). See also *Lavado* v. *Keohane*, 992 F.2d 601, 610-611 (6th Cir. 1993). Compare and contrast *Laubinger* v. *Department of Revenue*, 41 Mass. App. Ct. at 603.

cion" as that language has been construed. See *Longval* v. *Commissioner of Correction*, 404 Mass. 325, 333-334 (1989); *Martino* v. *Hogan*, 37 Mass. App. Ct. at 714 n.4. (dictum). Similarly, for the reasons set forth in *Hastings* v. *Commissioner of Correction*, 424 Mass. at 49-50, 52-53, the defendants were entitled to judgment on 'Abdullah's claims under G. L. c. 30A, and G. L. c. 127, § 32 (including the plaintiff's equal protection claim). None of 'Abdullah's remaining contentions requires a reversal of the judgment.

5. *Conclusion.* The awards of compensatory and punitive damages contained in the judgment pursuant to 42 U.S.C. § 1983 ($8,400, $1,500, $25,000) are vacated as are the declarations in the judgment. The matter is remanded to the Superior Court: 1) to enter an order that the department is to give the plaintiff a new classification hearing; and 2) for further proceedings consistent with this opinion on the issue of the plaintiff's sleeping arrangement when he was transferred to M.C.I., Concord. The remaining portions of the judgment are affirmed.

*So ordered.*

APPENDIX.

New classification regulations of the Department of Correction were issued in June, 1995. Reproduced below are a portion of the department's regulations of 1992, as in effect at the time of 'Abdullah's transfer, concerning classification hearings in cases of transfers of inmates for security reasons.

103 Code of Mass. Regs. § 420.08

. . .

(6) *Initial Classification Board Hearing* - To conclude the initial classification process, a classification board shall be convened to make recommendations to the Superintendent concerning an inmate's placement. The recommendations shall be based upon a review of the inmate's Classification and Program Agreement, if applicable, and upon all other information available relative to the inmate's security rating, institutional placement and program needs. The following standards shall be adhered to regarding the initial classification board process:

(a) *Board Composition* - All classification boards shall be comprised of at least three correctional staff members ap-

pointed by the Superintendent. One board member shall be designated by the Superintendent to act as Chairperson, and shall be responsible for the overall quality of the review process and for ensuring compliance with existing classification policies and procedures in accordance with M. G. L. c. 127, s. 20.

In instances where community based programs are being considered, [i.e.,] pre-release placement or placement in an outside hospital program, the board shall consist of five staff members, two of whom shall be correction officers, in accordance with M. G. L. c. 127, s. 49A.

(b) *Notice of Hearing* - The inmate shall be notified orally 48 hours in advance of his scheduled classification hearing. Prior to the classification hearing, an inmate shall be interviewed by the assigned correction counselor.

(c) *Case Presentation* - The inmate's assigned correction counselor shall make an oral and written presentation to the classification board, summarizing the inmate's prior history, present adjustment, current needs and program plan. Neither the correction counselor nor any other Department of Correction official is required to disclose to the inmate intelligence or informant information.

(d) *Inmate Presentation* - Following the correction counselor's presentation, the inmate scheduled for review shall appear before the classification board to present his needs and program goals for consideration. In the event that the inmate is unable or unwilling to attend the classification board hearing, the Chairperson of the board may proceed with the hearing.

(e) *Classification Board Recommendation* - After the case and inmate presentations to the classification board the Chairperson shall direct the inmate to leave the hearing room so that the board may deliberate. The board's final recommendation to the Superintendent concerning the inmate's placement and program within the correctional system shall be determined by a majority vote. Each board member, including the Chairperson, shall have one equal vote. The board's recommendation, and reasons for a minority vote, shall be recorded in the Chairperson's written summary report. The inmate shall be notified orally of all board recommendations.

(f) *The Classification Board Summary* - At the end of the classification board hearing a written summary of the board's recommendation to the Superintendent shall be prepared by the Chairperson. The summary shall contain, but shall not be limited to, the board's recommendation concerning the inmate's placement, the inmate's program plan, and the date that the inmate's case will be reviewed again. All summaries of board recommendations must be signed by the board Chairper-

son and the inmate being reviewed unless the inmate refuses to sign, in which case such refusal shall be documented. A copy of the summary and related materials shall be submitted to the Superintendent within five working days of the close of the hearing.

(g) *Superintendent's Review* - Within ten working days after receipt of the classification board's recommendation concerning an inmate's placement and program within the correctional system, the Superintendent or his designee shall render a decision concerning the inmate's classification.

(h) *Inmate Appeal* - Where an inmate is not in agreement with any classification board recommendation, the inmate may submit a written appeal of the classification board's recommendation to the Superintendent within five working days of oral notification of the board's recommendation.

The Superintendent or his designee shall respond in writing to the inmate within ten working days, noting the result of the appeal.

(I) *Central Office Review* - To finalize the classification process, the Superintendent's decision concerning an inmate's classification shall be submitted for authorization to the Commissioner or his designee.

§ 420.09

. . .

(3) (a) Whenever an inmate is considered for transfer to a higher security placement because he is being investigated for possible disciplinary offenses, has been charged with a disciplinary offense, or has been found guilty of a disciplinary offense; or because of security issues; or due to the inmate's failure to meet preconditions of his current placement, the inmate shall be afforded a classification hearing. Such hearings shall normally occur before the inmate's transfer. However, an inmate may be transferred to a higher security placement prior to such hearing should security needs so dictate; or because an inmate is being investigated for, or has been charged with, or has been found guilty of, a disciplinary offense. ·

(b) A hearing shall be held within 20 working days of such a transfer. However, where a disciplinary investigation is pending or information necessary to the classification decision is otherwise unavailable due to ongoing administrative processes, the hearing shall initially consist only of an evaluation of the inmate's security requirements and programmatic needs. Within ten working days of completion of the disciplinary investigation and/or compilation of all necessary information, a full hearing shall be held in accordance with the procedure set forth in 103 CMR 420.08(6)(a) through (I). In addition to such procedure, the following standards shall be adhered to:

1. The inmate shall be provided with at least 48 hours advance written notice prior to his classification hearing. Such notice may be waived by the inmate in writing. The notice shall contain a description of the board, the reasons for the hearing, procedures to be followed at the hearing, and a listing of the time and place for the hearing.

2. The inmate may be represented by an attorney or law student at the hearing. It is the inmate's responsibility to secure such representation and the Department shall afford him the opportunity to do so. The Department may, but is under no obligation to, reschedule a hearing to accommodate the legal representative's schedule.

3. The Chairperson shall direct questions to the inmate who must respond to all questions directly during the course of the hearing, whether or not a legal representative is present. The legal representative will be allowed to make a presentation to the board members for their consideration. Legal representatives shall be directed by the Chairperson to leave the hearing room with the inmate when the board deliberates and votes on the case.

4. An inmate may request a subsequent classification board hearing prior to his scheduled review. The inmate shall make a request to his or her correctional counselor stating the reason(s) for the requested review. The counselor shall present the request to the Superintendent or his designee who shall make a determination as to whether or not an early review shall be scheduled. Lower security transfers, except those governed by 103 CMR 420.09(2)(a) and (b), shall be preceded by a hearing conducted in accordance with 103 CMR 420.08(6)(a) through (I).