Hamlin, J.
The plaintiff, Joseph DeLong (“DeLong”), seeks damages from the defendants, L.E. Dubois and others (“the DOC”), alleging that his transfer from MCI-Shirley to MCI-Cedar Junction violated his due process rights under the Massachusetts and United States Constitutions. DeLong also alleges that the transfer violated the Massachusetts Code of Regulations. DeLong and the DOC have each moved for summary judgment. For the following reasons, the plaintiffs motion for summary judgment is DENIED and the defendants’ motion for summary judgment is ALLOWED.
FACTUAL BACKGROUND
The record presented on summary judgment presents the following undisputed facts. DeLong is a prison inmate in the Massachusetts Department of Correction. DeLong was housed in the Modular Unit at MCI-Cedar Junction, a maximum security prison, up until November 6, 1995, as a result of an October 18, 1994 prison uprising in which he was involved.[3] On November 6, 1995, DeLong was transferred to MCI-Shirley, a medium security prison, where he was housed in the general population. On November 8, 1995, Delong was transferred to the Modular Unit at MCI-Cedar Junction for administrative reasons that are not explained in the record. The DOC did not conduct a reclassification hearing prior to transferring DeLong from MCI-Shirley to MCI-Cedar Junction. On April 23, 1996, Delong received a reclassification hearing in which the Board approved a transfer to MCI-Shirley. On May 22, 1996, DeLong was transferred to MCI-Shirley.
The DOC claims that it did not provide DeLong with a reclassification hearing because his transfer to MCI-Shirley had been in eiror and because DeLong spent only two days at MCI-Shirley before he was transferred back to MCI-Cedar Junction. 103 Code Mass. Regs §420.09 requires that the DOC provide a reclassification hearing no later than 20 days after transferring an inmate. DeLong maintains that the DOC violated his Federal and State constitutional rights as well as the Mass. Code of Regulations by not providing a hearing within 20 days of his transfer.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue “and that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
I. The DOC did not violate DeLong’s Federal Due Process Rights
DeLong claims that his due process rights were violated when he was transferred from MCI-Shirley to MCI-Cedar Junction without a hearing. Inmate transfers, however, do not fall within federal due process protection unless they impose an “atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.” Sandin v. Conner, 115 S.Ct. 2293, 2300 (1995); Abdullah v. Secretary of Public Safety, 42 Mass.App.Ct. 387, 390 (1996); Hastings v. Commissioner of Correction, 424 Mass. 46, 51 (1997). In Sandin, an inmate was sentenced to 30 days in segregation after a hearing in which he was not permitted to present witnesses. In holding that the inmate’s liberty rights had not been violated, the Sandin court reasoned that “lawful incarceration *48 brings about the necessary withdrawal or limitation of many privileges and rights[.]” Sandin at 2301. The court held that the inmate’s “segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest” because the segregation mirrored conditions imposed upon inmates in administrative segregation and protective custody.
Since the Sandin decision, Massachusetts cases have consistently held that inmates can not maintain a due process claim when they are transferred within the prison system. In Abdullah, the court held that an inmate who was transferred without a reclassification hearing “had no protected liberty interest in a particular security grade or location of confinement” and thus did not have a viable due process claim. Id. at 390. The court further stated that regulations governing reclassification did not create “a liberty interest by mandating a procedure that was due.” Id. See Hastings.
In Dominique v. Weld, 73 F.3d 1156 (1st Cir. 1996), an inmate on work release status who was housed in a prerelease facility was required, despite his good standing, to return to a medium security prison. The court held that the inmate did not have a liberty interest in remaining on work release status and that he was not entitled to due process of law before that privilege could be revoked. Id. at 1160. The court reasoned that although the inmate suffered significant deprivation after his work release was revoked, “confinement within four walls ... is an ordinary incident of prison life [and] [i]t is not atypical.” Id. The court further reasoned that if it held that the transfer was atypical, then atypical restraint could be found whenever an inmate was moved to a more restrictive situation even if the situation were a commonplace aspect of prison existence. Id.
DeLong was moved from a medium security prison to maximum security prison within the space of two days. Although his privileges were reduced as compared to inmates living in the general populations at both MCI-Shirley and MCI-Cedar Junction, under Sandin and Massachusetts case law, DeLong does not have a federal due process right to a transfer hearing. The treatment he received in the Modular Unit was not atypical of other prisoners in the Modular Unit, and the transfer did not affect the duration of his sentence. Because his treatment in the Modular Unit was not atypical, DeLong does not have a liberty interest for which he can maintain a claim that his due process rights were violated.
II.The DOC did not violate DeLong’s Due Process Rights under the Massachusetts Constitution
DeLong’s claim that his due process rights were violated under the state constitution is without merit. “The general statute governing inmate custody assessments and needs, G.L.c. 124, §1(g),... do[es] not limit the broad discretion afforded prison officials by imposing substantive standards governing . . . reclassification to higher security.” Hastings at 52. See also Abdullah. Both Hastings and Abdullah held that inmates transferred within the prison system in contravention of the Mass. Code of Regulations do not have a viable due process claim under the state constitution. Hastings at 52; Abdullah at 393.
III.The DOC is entitled to qualified immunity
“Qualified immunity shields public officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Singer v. State of ME., 49 F.3d 837, 844 (1st Cir. 1995). “The right alleged to have been violated must have been clearly established at the time of the alleged violation . . . and the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Id. The DOC did not violate a clearly established constitutional right because DeLong did not have an enforceable liberty interest. The DOC is entitled to qualified immunity.
IV.The DOC violated departmental regulations
Since the record reflects that sending Delong to Shirley was an administrative error and the error was almost immediately corrected, there was no reclassification hearing required pursuant to 103 Code Mass. Reg.88 420.09, 420.08.
Even assuming arguendo, that he was entitled to a hearing, the remedy would be to order such a hearing held. Abdullah at 391-92. On May 22, 1996, the plaintiff was released from the Modular unit and was sent to Shirley where he is presently. Any such hearing therefore is neither necessary nor warranted.
The plaintiff is not entitled to money damages based upon the facts and circumstances of this case.

ORDER

For the above reasons, the court hereby ORDERS that the plaintiffs Motion for Summary Judgment is DENIED and the defendants’ Motion for Summary Judgment is ALLOWED.

 The DOC states in its brief that DeLong was housed in the Modular Unit. DeLong, in his affidavit, states that he was housed in Bristol I Block on Awaiting Action status from September 29, 1995 until November 6, 1995. While there is a dispute of fact as to where DeLong was housed prior to his transfer to MCI-Shirley, this issue is not material to the court’s decision.