Bohn, J.
I. INTRODUCTION
This case arises out of the plaintiffs attempt to obtain additional earned good time credits he claims are due him. The parties are before the court on the defendants’ motion for summary judgment pursuant to Mass.R.Civ.P. 56. After a hearing and for the reasons set forth below, the defendants’ motion for summary judgment will be ALLOWED.
II. BACKGROUND
Robert Foster (“Foster”) was convicted of one count of rape of a child under the age of 16 in 1978. On March 24, 1978, he was sentenced to a term of not *413 more than twenty-five years, and not less than twenty years. At sentencing, the court also ordered 74 days of pre-trial jail time as deemed served, making the date his sentence became effective January 9, 1978. Foster’s maximum discharge date was calculated by adding the maximum term of 25 years to January 9, 1978, and dropping one day. This made Foster’s maximum release date pursuant to M.G.L.c. 127, §129, January 8, 2003.
Pursuant to Chapter 127, Section 129D, inmates who participate in approved prison programs are eligible for 2.5 days per month, per activity, up to a maximum of 7.5 days per month of earned good time credits (“GTCs”).[2] These credits reduce the amount of time inmates are required to serve.
Pursuant to 110 C.M.R. 411, et seq. the Commissioner of Corrections or his designee has the authority to determine whether an inmate has satisfactorily completed a program eligible for GTCs'. Thus, the mere attendance of an inmate at an approved program does not automatically mean the inmate will be credited for the attendance. While incarcerated, Foster participated in various prison activities, including working in the prison, attending Alcoholics Anonymous (“AA”), and Narcotics Anonymous (“NA”) meetings, and participating in various educational, sport and Fellowship programs. Foster received credit for all satisfactory participation.
From 1982 through 1993, at different times, the Department changed its policies to make fewer programs eligible for GTCs, without revising the appropriate regulations. Several inmates challenged the Department’s actions, which resulted in two Superior Court decisions on the subject.[3] The Scuderi decision (Lauriat, J.), resulted in Foster receiving full GTC, up to 2.5 days per month, for time not already credited for certain program participation between 1982 and 1987. The order arising from the Piggott case (Zobel, J.), resulted in Foster receiving additional GTCs for the period from August 1987, through May 1993. Subsequent to May of 1993, according to Department regulations, inmates were no longer entitled to credits for attending AA and NA, thus, Foster received no credit for these programs after May 1993.
The Department has credited Foster with a total of 968.5 days of GTCs. This credit resulted in Foster being released from criminal confinement on May 13, 2000. Prior to Foster’s release, the legislature revised Chapter 123A, regarding the civil commitment of sexually dangerous persons. Pursuant to this revision, Foster was discharged to civil commitment at the Massachusetts Treatment Center. It is unclear from the evidence before the court whether a final determination as to Foster’s dangerousness has been made.
III. DISCUSSION
Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The existence of disputed facts is consequential only if those facts have a material bearing on the disposition of the case. Norwood v. Adams-Russell Co., 401 Mass. 677, 683 (1988).
Foster argues that he is not subject to the maximum monthly cap on GTCs because the statute did not take effect until 1989. Since he was incarcerated in 1978, Foster asserts, the application of the 1989 statute is an ex post Jacto application of law and thus violative of his due process rights. Foster is mistaken.
The regulation capping the monthly GTCs at 7.5 days became effective in 1975, three years prior to Foster’s incarceration, and was codified in 1989. Regulations lawfully promulgated by an agency of the Commonwealth have the full force of law. Royce v. Commissioner of Corrections, 390 Mass. 425, 427 (1983) (citations omitted); ‘Abdullah v. Secretary of Public Safety, 42 Mass.App.Ct. 387, 391-92 (1997). Because the regulation capping the number of days that can be earned per month became effective three years prior to Foster’s incarceration, he is subject to the regulation and subsequent statutory codification. There has been no ex post facto application of the law. Libby v. DuBois, Suffolk Super. C.A. No. 92-5515F, Fremont-Smith, J. (August 4, 1997) (ruling that because the regulation capping the maximum per month earned good time allowed became effective one month prior to the petitioner’s offense, petitioner was subject to the regulation).
Foster next argues that he is entitled to GTCs for attending both AA and NA since 1993, when the Department changed its regulations to prohibit GTC for these activities. He contends that this elimination of AA and NA is an ex post facto application of the law. Foster is again mistaken.
To apply a new regulation to Foster in 1993 and not violate the ex post facto clause of the United States Constitution, the regulation must not be “more onerous” than the previous regulation. Piper v. Penn, 560 F.Sup. 253, 258 (D.N.H. 1983); Dobbert v. Florida, 432 U.S. 282, 294 (1977). The 1993 regulation did not change the maximum number of GTCs an inmate could earn, but merely changed the GTC eligibility of certain programs. Because the 1993 exclusion of AA and NA does not alter Foster’s ability to earn all GTCs that were available to him prior to 1993, or deprive him of credits earned prior to 1993, the regulation is not more onerous than the prior incarnation. “The Constitution’s prohibition on expostfacto laws simply does not put a perpetual freeze on the kinds of activities the Commissioner may award, or decline to award, good time credits.” Bradham v. Dubois, Middlesex Super. C.A. No. 92-2253 (1992); see also Ali v. DuBois, Middlesex Super. C.A. No. 93-3870 Fremont-Smith, J. (1 Mass. L. Rptr. 480) (February 4. 1994); Scarpa v. DuBois, Middlesex Super. C.A. No. 92-04871 (1992); *414 Ortiz v. DuBois, Middlesex Super. C.A. No. 92-9290 (1992).
IV. ORDER
For the foregoing reasons, the defendants’motion for summary judgment is hereby ALLOWED.

 Foster was incarcerated in 1978. On March 14, 1975, 103 C.M.R. 411.09(1) became effective, capping the maximum monthly GTCs at 7.5 days. This cap remained effective through regulatory revisions in 1978, 1986 and 1990. In 1989, the regulation was codified into law in Chapter 127, §129D.

 Piggott v. DuBois, Suffolk Super. C.A. No. 92-3777-A, Zobel, J. (May 17, 1993) (ordering retroactive earned good time credits for attendance at AA and NA); see also Scuderi v. Larry DuBois, Middlesex Super. C.A. No. 91-8495, Lauriat, J. (February 19, 1992) (ordering inmate petitioner be awarded with certain earned good time credits because the Department of Corrections failed to follow its own policies).